KENNEDY, RESPONDENT, *v.* THE GRAND FRATERNITY,
APPELLANT.

(No. 2,460.)

(Submitted December 5, 1907.  Decided December 16, 1907.)

[92 Pac. 971.]

*Insurance—Fraternal Societies—Nonpayment of Dues—Time—*
*Essence of Contract—Forfeiture—Reinstatement—Burden of*
*Proof — Discretion — Waiver — Estoppel in Pais—Agents—*
*Ratification.*

Insurance—Fraternal Societies—What Constitutes Contract.
    1.   The certificate issued by a fraternal insurance order, together
    with the provisions of its constitution and by-laws, constitute the
    contract of insurance between it and one of its members.

Same—Nonpayment of Dues—Forfeiture.

2. It is competent for a fraternal insurance society to make a contract of life insurance with one of its members, containing a provision, among others, that failure to make payment of dues within the time allowed for making payment, shall work a forfeiture of his certificate, without notice to or demand upon the insured.

Same—Payment of Dues—Time—Essence of Contract.

3. Where a certificate of insurance of the character of the one above referred to provides that it shall be void if payment of dues or premium is not made at a specified time, time is of the essence of the contract, and failure to make payment on or before such time works an absolute forfeiture.

Same—Delinquency—Reinstatement—Burden of Proof.

4. Where one, insured under a contract with a fraternal insurance order, had become delinquent by failure to pay his dues and premium at a specified time, and, upon insured's death, his beneficiary relied for recovery upon a condition subsequent, to wit, decedent's reinstatement prior to his death, which was denied in the answer—she assumed the burden of proof upon that issue.

Same—Delinquency—Reinstatement—Requisites.

5. The provisions of the constitution and by-laws of a fraternal insurance society, relative to the method to be pursued by a delinquent member to bring about his reinstatement, must be construed together; hence, a literal compliance with one provision, which required the filing of a proper application with, and payment of the dues and assessments in arrears to, the collector of a local lodge, did not alone work a reinstatement, where it was also made incumbent upon the applicant, by a subsequent provision, to furnish proof of his then good health, and where thereupon his reinstatement depended upon the approval of the application by the secretary of the grand body.

Same—Delinquency—Reinstatement—Discretion.

6. If, in passing upon an application for reinstatement to membership in a society of the kind referred to above, the officer of the grand body to whom proof of the applicant's good health must be submitted, in the exercise of the discretion lodged in him, decides adversely to the applicant, the latter cannot complain.

Same—Delinquency—Reinstatement—Proof.

7. The constitution and by-laws of a fraternal insurance society provided, among other things, that the "secretary" of the grand body should pass upon applications for reinstatement of delinquent members. The officer performing the duties of secretary for a local branch was styled "collector." A member, delinquent for two months, paid all dues in arrears and also those for a current month, to the collector of the subordinate lodge. The insured died while his application for reinstatement was pending. *Held*, that, since the officer whose duty it was to pass upon such applications was the "secretary" of the grand body, and not the person who acted as such officer for the local branch, a reinstatement was not the result of a remark, claimed to have been made by the collector, when accepting payment of the dues, that the delinquent was again in good standing.

Same—Delinquency—Reinstatement—Evidence—Insufficiency.

8. Evidence reviewed in the cause mentioned in the foregoing paragraphs, and *held* to be insufficient to show a reinstatement of the delinquent member prior to his death.

Same—Delinquency—Waiver.

9.   Where the delinquency of a member in a fraternal insurance society operated *ipso facto* to terminate his membership and to abrogate his contract of insurance, and he knew that the secretary of the grand lodge only was vested with the authority to pass upon his application for reinstatement, and there was nothing further that he could do toward his reinstatement, he could not have been misled to his prejudice by anything said or done by the collector of the local branch of the society when accepting payment of dues in arrears and those not yet due, into the belief that the society had waived its right to declare a forfeiture of his certificate upon non-payment at a specified time, and the doctrine of waiver was, therefore, not applicable.

Same—Delinquency—Estoppel *in Pais.*

10.   Where the record in the above action did not show that either the insured or his beneficiary was misled to his or her prejudice by the silence of the insurer when in equity and good conscience it ought to have spoken, or by some affirmative act or conduct on its part, in the matter of the insured's delinquency or reinstatement, the doctrine of estoppel *in pais* was inapplicable.

Same—Delinquency—Reinstatement—Evidence of Good Health—Discretion.

11.   The officer in whom was lodged the authority to pass upon applications for reinstatement of delinquents to membership in a fraternal insurance order, may not be said to have abused the discretion vested in him by the constitution and by-laws of the society, in rejecting an applicant who, according to the evidence, had, about two months prior to his application for reinstatement, been confined to his bed by pneumonia for three weeks, a disease shown to be often accompanied by serious lung troubles.

Same—Delinquency—Reception of Current Dues—Reinstatement—Unauthorized Act of Agent—Ratification.

12.   The defendant insurance society mentioned in the foregoing paragraphs, had never intentionally conferred authority upon its local collector to waive delinquency or to receive current dues after delinquency, nor did the collector believe that he had such authority.   The delinquent knew that only the secretary of the grand body could reinstate him.   The dues, both delinquent and current, paid to the collector were never forwarded to the central body but retained by him subject to the approval of the application for reinstatement.   Immediately upon receipt of the application it was rejected and the collector directed to tender back the amount paid.   *Held,* that a ratification by the society of the unauthorized act of its local collector had not been shown, and that therefore the insurer was not estopped to claim a forfeiture.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by Mary Kennedy against The Grand Fraternity. From a judgment for plaintiff and an order denying it a new trial, defendant appeals.   Reversed and remanded.

STATEMENT OF THE CASE, BY THE JUSTICE DELIVERING THE
OPINION.

This is an action to recover upon a policy of life insurance.
With a single exception, it may be said that there is not any
dispute as to the facts, which, as disclosed by the pleadings and
undisputed testimony, are: Prior to March, 1905, Patrick Ken-
nedy became a member of The Grand Fraternity, a fraternal
insurance society or company, organized under the laws of
Pennsylvania, and with the head offices at Philadelphia. Fred-
erick Gaston was president, and W. E. Gregg secretary of the
grand lodge or body. Subordinate lodges or societies were in-
stituted in different communities, one being located in Butte,
of which Kennedy was a member. Upon the approval of his
application for membership there was issued to Kennedy a policy
of life insurance, denominated ''death benefit certificate,'' for
$2,000, payable at his death to Mary Kennedy, his wife. The
premium on this policy was $5.60, payable monthly. This policy
contained a provision that if the insured ''shall fail to pay
the dues as required, * * * this certificate shall be null
and void,'' and also referred to the constitution and by-laws
of the order, which are made a part of the policy.

Among other provisions of the constitution and by-laws are the
following: ''Any *frater* who fails or neglects to pay, or cause
to be paid, the monthly beneficial dues on or before the last
secular day of the calendar month, as required, shall thereupon
become suspended by his own act, and his benefit certificate
or certificates shall be absolutely void. * * * Any bene-
ficial member who shall fail to pay the monthly dues on or before
the last secular day of the calendar month, as required, shall
thereupon, and in each and every such case, for himself, and his
beneficiary or beneficiaries, forfeit all right to any disability
or death benefit from the fraternity, and his benefit certificate
or certificates shall be absolutely void. * * * Every *frater*
shall cease to be in good standing by failure to pay the dues, as
required, and in every such case shall thereupon forfeit all

privileges and benefits of membership, and all liability of the *frater* to the fraternity, and all liability of the fraternity to the said *frater,* or any beneficiary under or because of any certificate issued for or on account of his beneficial membership shall thereupon end and be forever determined.''

Kennedy failed to pay any dues for the month of April or the month of May, 1905. On June 19th Kennedy made application for reinstatement in the order, tendering with the written application all fees then due, including the ⋅ dues which would be required for the month of June in case he was reinstated. This application and these dues were delivered to one Hutchinson, the collector of the local lodge in Butte, who retained the dues and forwarded the application to the secretary of the grand lodge at Philadelphia. On June 24th the secretary of the grand lodge disapproved the application for reinstatement. On June 30th Patrick Kennedy died, and on the same day, after his death, notice of the action of the grand lodge was given to the beneficiary by Hutchinson. Because of the failure of the company to pay the amount of the policy, or any part thereof, this action was commenced by the beneficiary named in the policy. The plaintiff recovered judgment for the amount of the policy, and from the judgment and order denying it a new trial the defendant appeals.

*Messrs. Kirk, Varnum & Kirk,* for Appellant.

If an insurance policy contains a condition by which it is to be void if payment of dues is not made at an appointed time, time is material and of the essence of the contract, and failure to make prompt payment will work absolute forfeiture. (*Field v. National Council,* 64 Neb. 226, 89 N. W. 773; *Borgraefe v. Supreme Lodge,* 22 Mo. App. 127; *Illinois Masons Benevolent Soc.* v. *Baldwin,* 86 Ill. 479; *Karcher* v. *Supreme Lodge,* 137 Mass. 368; *Sick* v. *Covenant Mutual Life Ins. Co.,* 79 Mo. App. 609; *Bosworth* v. *Western Mutual Aid Soc.,* 75 Iowa, 582, 39 N. W. 903; *Hogins* v. *Supreme Council,* 76 Cal. 109, 9 Am. St. Rep. 173, 18 Pac. 125; *Grand Lodge* v. *Marshall,* 31 Ind. App.

534, 99 Am. St. Rep. 273, 68 N. E. 605; *Butler* v. *Grand Lodge,* 146 Cal. 172, 79 Pac. 861; *Adams* v. *Grand Lodge,* 66 Neb. 389, 92 N. W. 588; *Lehman* v. *Clark,* 174 Ill. 279, 43 L. R. A. 648, 51 N. E. 222; *Parker* v. *Bankers Life Assn.,* 86 Ill. App. 315.)

There is no evidence or claim that Hutchinson's remarks at the time the dues were left with him caused the deceased or plaintiff to do or neglect to do anything to prevent the grand secretary from approving the application for reinstatement. Neither is there anything to show that the defendant had any knowledge of Hutchinson's remark; hence, there can be no estoppel. (*Whigham* v. *Supreme Court I. O. F.,* 44 Or. 543, 75 Pac. 1067; *Field* v. *National Council,* 64 Neb. 226, 89 N. W. 773.)

*Mr. Jesse B. Roote, Mr. Peter Breen,* and *Mr. A. C. McDaniel,* for Respondent.

A waiver of a condition of a forfeiture arises from the receipt of a premium or due by the company's agent, with knowledge of the breach of the condition or of the forfeiture. And if an insurance company collects and receives subsequent dues or assessments after a right to declare a forfeiture, the company waives the forfeiture for nonpayment of the prior dues. And the appellant, by accepting, through its agent, payment for the month of June, waived all right to declare a forfeiture, and is liable. (*Millard* v. *Supreme Council,* 81 Cal. 340, 22 Pac. 864; *McDonald* v. *Supreme Council,* 78 Cal. 49, 20 Pac. 41; *Murray* v. *Home etc. Assn.,* 90 Cal. 402, 25 Am. St. Rep. 133, 27 Pac. 309; *Tobin* v. *Western etc. Soc.,* 72 Iowa, 261, 33 N. W. 663; *McGowan* v. *Northwestern Legion of Honor,* 98 Iowa, 118, 67 N. W. 89; *Towle* v. *Ionia etc. Co.,* 91 Mich. 219, 51 N. W. 987; *Stylow* v. *Wisconsin etc. Co.,* 69 Wis. 224, 2 Am. St. Rep. 738, 34 N. W. 151; *Rice* v. *New England etc. Co.,* 146 Mass. 248, 15 N. E. 624; *Rowswell* v. *Equitable etc. Co.,* 13 Fed. 840; *Watson* v. *Centennial etc. Co.,* 21 Fed. 698; *McKinney* v. *German Ins. Soc.,* 89 Wis. 653, 46 Am. St. Rep. 861, 62 N. W. 413; *Daniher* v. *Grand Lodge,* 10 Utah, 110, 37 Pac. 245; *Bailey* v. *Mutual Ben. Assn.,* 71 Iowa, 689, 27 N. W. 770; *Metropolitan Ins. Co.* v.

*Windover,* 137 Ill. 417, 27 N. E. 538; *Griesa* v. *Massachusetts Ben. Assn.,* 133 N. Y. 619, 30 N. E. 1146; *Walsh* v. *Aetna etc. Co.,* 30 Iowa, 133, 6 Am. Rep. 664; *Sweetser* v. *Odd Fellows,* 117 Ind. 97, 19 N. E. 722.)

An insurance company is estopped to deny the right of an agent to perform acts which are within the scope of his authority. And where a certain state of facts exists of which the agent, acting within the scope of his authority, has knowledge at the time he was so acting, such knowledge will act as a waiver, and will estop the company from availing itself of a forfeiture. (*Walsh* v. *Aetna etc. Co.,* 30 Iowa, 133, 6 Am. Rep. 664; *Logsdon* v. *Supreme Lodge,* 34 Wash. 666, 76 Pac. 292; *Sweetser* v. *Odd Fellows,* 117 Ind. 97, 19 N. E. 722; *Jennings* v. *Metropolitan etc. Co.,* 148 Mass. 61, 18 N. E. 601; *Alexander* v. *Grand Lodge,* 119 Iowa, 519, 93 N. W. 508; *Loughbridge* v. *Iowa life etc. Co.,* 84 Iowa, 141, 50 N. W. 568; *Modern Woodmen* v. *Colman,* 68 Neb. 660, 94 N. W. 814, 96 Pac. 154; *Erdman* v. *Mut. Ins. Co.,* 44 Wis. 376; *Painter* v. *Insurance Co.,* 131 Ind. 68, 30 N. E. 876; *Northwestern etc. Co.* v. *Amerman,* 119 Ill. 329, 59 Am. St. Rep. 799, 10 N. E. 225; *Viele* v. *Germania etc. Co.,* 26 Iowa, 9, 96 Am. Dec. 83; *Combs* v. *Insurance Co.,* 43 Mo. 148, 97 Am. Dec. 383; *American Insurance Co.* v. *Gallatin,* 48 Wis. 36, 3 N. W. 772; *Hastings* v. *Brooklyn etc. Co.,* 138 N. Y. 473, 34 N. E. 289; *Van Houten* v. *Pine,* 38 N. J. Eq. 72; *Hartford etc. Co.* v. *Hayden,* 90 Ky. 39, 13 S. W. 585; *Knarston* v. *Manhattan etc. Co.,* 124 Cal. 74, 53 Pac. 773; *Snyder* v. *Nederland etc. Co.,* 202 Pa. St. 161, 51 Atl. 744; *Oshkosh* v. *Germania etc. Ins. Co.,* 71 Wis. 454, 5 Am. St. Rep. 233, 37 N. W. 819; *West Coast etc. Co.* v. *State etc. Ins. Co.,* 98 Cal. 502, 33 Pac. 258; *Trotter* v. *Grand Lodge,* 132 Iowa, 513, 109 N. W. 1099; *Supreme Lodge* v. *Withers,* 177 U. S. 260, 20 Sup. Ct. 611, 44 L. Ed. 762; *Agricultural Ins. Co.* v. *Potts,* 55 N. J. L. 158, 39 Am. St. Rep. 637, 26 Atl. 27; *Silverberg* v. *Phoenix etc. Co.,* 67 Cal. 36, 7 Pac. 38; *Kruger* v. *Western etc. Ins. Co.,* 72 Cal. 91, 1 Am. St. Rep. 42, 13 Pac. 156.)

Forfeitures are not favored in the law.  (*Knarston* v. *Manhattan etc. Co.,* 124 Cal. 74, 53 Pac. 773.)

The following cases support the view that, under the circumstances, as those in the case at bar, the question of waiver should be submitted to the jury: *Sweetser* v. *Odd Fellows,* 117 Ind. 97, 19 N. E. 722; *Jennings* v. *Metropolitan etc. Co.,* 148 Mass. 61, 18 N. E. 601; *North British etc. Co.* v. *Steiger,* 124 Ill. 81, 16 N. E. 95; *Brumfield* v. *Union Ins. Co.,* 87 Ky. 122, 7 S. W. 893; *Cleaver* v. *Traders' Ins. Co.,* 71 Mich. 414, 15 Am. St. Rep. 275, 39 N. W. 571; *Agricultural Ins. Co.* v. *Potts,* 55 N. J. L. 158, 39 Am. St. Rep. 637, 26 Atl. 27; *Pitney* v. *Glens Falls Ins. Co.,* 65 N. Y. 6.

Where the insured has complied with all the requirements of reinstatement, and the evidence in this case showed he did, the insurance company cannot arbitrarily and without cause refuse to reinstate.  (*Dennis* v. *Mass. Ben. Assn.,* 120 N. Y. 496, 17 Am. St. Rep. 660, 24 N. E. 843, 9 L. R. A. 189; *Lovick* v. *Provident Life Assn.,* 110 N. C. 93, 14 S. E. 506; *French* v. *Mutual etc. Assn.,* 111 N. C. 391, 32 Am. St. Rep. 803, 16 S. E. 427; *Van Houten* v. *Pine,* 38 N. J. Eq. 72.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The complaint, among other things, alleges: "(6) That at the time of his said death, as above set forth, the deceased was a member in good standing of the said corporation known as The Grand Fraternity, defendant above named." This is denied in the answer.

The solution of this controversy depends upon the answer to the question, What was the effect upon Kennedy's membership of his failure to pay the dues for April and May, 1905? The policy of insurance, together with the provisions of the constitution and by-laws of the order applicable, constitute the contract between the parties. (25 Cyc. 744; 3 Am. & Eng. Ency. of Law, 2d ed., 1080, 1081; *O'Connor* v. *Grand Lodge A. O. U. W.,* 146 Cal. 484, 80 Pac. 688; 5 Current Law, 1528.)

The constitution and by-laws, quoted above, provide that if the assured, denominated "frater," shall fail to pay his monthly dues on or before the last secular day of the month for which the same are due and payable, he shall "thereupon become suspended by his own act, and his benefit certificate or certificates shall be absolutely void," and such failure shall forfeit all right of the insured or beneficiary, to any death benefit from the defendant fraternity, and such failure to pay shall forfeit all privileges and benefits of membership of the insured, and upon such failure to pay, all liability of the defendant fraternity to the insured, or beneficiary, because or on account of the certificate or policy, shall "thereupon end and be forever determined." These provisions seem too plain to admit of construction or interpretation. The mere failure of Kennedy to pay his dues for April and May, *ipso facto* worked a forfeiture of his membership and an abrogation of the contract between the parties. That it is perfectly competent for the parties to make a contract of this character, which provides that the failure to make payment of dues within the time allowed shall work a forfeiture, without notice to or demand upon the insured, is beyond controversy. (25 Cyc. 831, and cases cited.)

It is a general rule of the law of life insurance, that if the contract of insurance contains a provision like the one in controversy, by which it is void if payment of the dues or premium is not made at an appointed time, then time is of the essence of the contract, and a failure to make payment on or before the appointed time works an absolute forfeiture. (19 Ency. of Law, 2d ed., 44, 47, and cases cited; *Butler* v. *Grand Lodge A. O. U. W.*, 146 Cal. 172, 79 Pac. 861; 2 Bacon on Benefit Societies and Life Insurance, 3d ed., secs. 354, 385.) Under the terms of this contract, then, Kennedy forfeited his membership in the society and any right which he or his beneficiary had by virtue of the policy.

. But it is further alleged in the complaint that on June 19, 1905, the insured paid to the defendant all dues, fines and penalties due to July 1, 1905, which sum "was accepted by the

defendant herein as payment in full of all dues, fines and penalties of said beneficiary certificate for said period of time, and the said defendant reinstated the said deceased, Patrick Kennedy, and the said Patrick Kennedy then by reason of said payment so made by him and accepted by said defendant became in good standing in said organization, defendant above named, and entitled to all the rights and benefits accruing to him under the said certificate set forth." These allegations are also denied in the answer; and plaintiff is now seeking to recover upon the theory that Kennedy was reinstated in the society and his contract of insurance revived prior to his death. In other words, the plaintiff is relying upon the performance by Kennedy of a condition subsequent, and, having pleaded and relied upon his reinstatement, it is well settled that she assumed the burden of proof upon that question, since it is denied in the answer that Kennedy ever was reinstated. (*Brun* v. *Supreme Council A. L. of H.,* 15 Colo. App. 538, 63 Pac. 796; 2 Bacon on Benefit Societies and Life Insurance, sec. 469.)

In this connection respondent relies upon the first paragraph of section 4, article 8, of the constitution and by-laws of the order, which provides: "Any *frater,* who shall have forfeited his benefit certificate or certificates by a default in the payment of dues, if then in good health, may be reinstated and his benefit certificate revived, by presenting an application to the collector of the branch, or to the secretary, accompanied by the amount in arrears, together with a fine of not exceeding 15 per cent additional." And it is said, in effect, that all that could be demanded of Kennedy was that he file with the collector of the local lodge a proper application for reinstatement,—which he did,—and accompany it with the necessary fees then in arrears,—which he did (no fines were demanded) ; and, therefore, having met all the requirements of this paragraph, Kennedy was thereby reinstated in the society, and neither the society nor its officers could arbitrarily refuse to recognize such reinstatement, and, if the premise upon which this conclusion is based is correct, the conclusion is uncontrovertible. But the

remaining paragraph of that section reads as follows: "In every such application, the applicant shall furnish satisfactory proof that he is in good health, and, if no charges of any kind are pending against him (and the application shall be approved by the secretary) the applicant shall thereupon become reinstated and his benefit certificate revived and again in force."

But respondent contends that, notwithstanding this last paragraph, the first paragraph above provides a complete method for the reinstatement of a delinquent member, with all the terms of which Kennedy fully complied. But we are not able to agree with this construction. We think the entire section must be read together; that it provides only one method for the reinstatement of a delinquent member, and the plaintiff, having relied upon Kennedy's reinstatement, assumed the burden of proving (1) that the deceased made application for reinstatement, (2) that dues in arrears were paid, (3) that at the time of making such application he furnished to the defendant satisfactory proof that he was in good health, and (4) that the application was approved by the secretary, unless some of these requirements were waived, or the society estopped itself to claim that Kennedy had forfeited his membership. Any other construction of this section of the constitution and by-laws would render the second paragraph, above, absolutely meaningless.

It may be conceded that the insured complied literally with provisions 1 and 2, just stated. But this contract is to be distinguished from other contracts of life insurance, which provide that upon the doing by the insured of certain acts he thereby becomes *ipso facto* reinstated. This contract requires, in addition to the acts and things to be done on the part of the insured, that the society, or its officers, shall take certain affirmative action which involves the exercise of discretion and judgment; for the insured is only reinstated upon furnishing satisfactory evidence that he is in good health, and securing the approval of the grand secretary. In *Butler* v. *Grand Lodge,* 146 Cal. 172, 79 Pac. 861, the court said: "It was entirely within the power of the parties to agree as to the terms and conditions of rein-

statement. The question in such case is as to what the agreement of the parties was, and where the language of the agreement is clear and unequivocal, the courts have no choice but to enforce the contract as it is written.'' We agree with this conclusion, and are unable to see anything in the contract with reference to reinstatement that is unconscionable or ought not to be enforced by the courts.

While there is nothing in this record to indicate to what officer or body the evidence of Kennedy's good health was referable, or who was to exercise the discretion provided for by the constitution and by-laws with respect to that evidence, since the application had to receive the approval of the secretary of the grand lodge, it would seem to be a fair inference that the evidence must be satisfactory to that officer. The record fails to disclose for what reason the secretary of the grand lodge refused to approve the application; but since the plaintiff assumed the burden of showing that Kennedy had been reinstated prior to his death, the failure in this regard is a failure of proof on the part of the plaintiff, for it may be true, as she contends, that if the proof of Kennedy's good health was satisfactory to the secretary of the grand lodge, he could not arbitrarily refuse to approve the application for reinstatement, since it appears to be conceded that there were no charges pending against Kennedy. But in order to show that Kennedy was reinstated, she assumed the burden of showing that the evidence of his good health was satisfactory to the officer who, or body which, was to pass upon the same.

We think it cannot be controverted that where a discretion is vested in some officer or examining board the applicant for reinstatement cannot complain if such discretion is exercised against his interests. In other words, if there is any doubt in the mind of the officer or body having to pass upon the sufficiency of such evidence of good health, then such officer or body may exercise his or its judgment or discretion in the matter; and if such judgment is exercised and a decision is reached

adverse to the applicant, no complaint can be made.    (25 Cyc. 849.)

But respondent contends that the secretary of the society did approve of Kennedy's application for reinstatement.  ·This contention, however, is based upon the assumption that Hutchinson was the secretary referred to in the constitution and by-laws above, and that when Kennedy's application for reinstatement was presented to him, with the accompanying fees, he receipted for them as dues for the months of April, May and June, and stated to Mrs. Kennedy, who presented the application, that he (Kennedy) was in good standing until July.   But this contention cannot be sustained.   The evidence is uncontroverted that there was but one officer designated "secretary," and that was the secretary of the grand body, W. E. Gregg, of Philadelphia, Pennsylvania.   And, as indicating that this fact was well understood by the insured during his life time, it is only necessary to call attention to a provision in his application for reinstatement in which he says: "And I do hereby agree that my reinstatement as a beneficial member is and shall be upon the express condition that the above representations are true, full and complete at the time of the receipt and approval of this application by the secretary of The Grand Fraternity."   Hutchinson denied that he made the statement attributed to him.   He testifies that he may have said that the application itself was all right, meaning that it was in proper form.

While it is alleged in the complaint that the defendant society accepted the dues tendered with the application for reinstatement, that is denied, and the testimony is uncontroverted that Hutchinson received the dues, as the constitution provides he should do in case of an application for reinstatement, so far as the dues were delinquent, but that they were not forwarded to the grand lodge as other dues and fees were, but were retained by Hutchinson to await the action of the grand lodge upon the application for reinstatement, and, when the application was rejected, the fees and dues so deposited with Hutchinson were tendered by him to this plaintiff immediately after the death of

her husband, and within a week after the application was rejected in Philadelphia.

Viewed, then, in the light most favorable to this plaintiff, the evidence wholly fails to show that Kennedy was reinstated prior to his death, or at all, since his application failed to receive the approval of the secretary of the grand body, the officer who, under the contract of insurance, was vested with authority to approve or disapprove the same.

With respect to the effect of the delinquency of a member upon his membership, it may be said in general terms that all contracts of life insurance fall into one or the other of the two following classes: The first class comprehends all contracts which provide that upon default of the member he is liable to suspension or expulsion; and the second class comprises contracts by the terms of which the member's delinquency *ipso facto* works a loss of membership. The first class contemplates some affirmative action on the part of the society in order to fully terminate the membership. The second does not. Under a contract of the first class, even during the period of delinquency, and prior to such affirmative action having been taken, the delinquent is nevertheless a member of the society, with certain rights and certain claims upon the society. Under a contract of the second class, immediately upon the delinquency happening, the membership terminates and the delinquent has not any longer a claim against the society. These principles and this distinction ought to be kept in mind in determining the last contention of the respondent, which is, that notwithstanding Kennedy's failure to pay the dues for April and May, the defendant society waived the forfeiture of his policy and cannot now be heard to say that he was not a member in good standing at the time of his death. This contention is based upon (a) the receipt of dues for June, and (b) the conduct of Hutchinson. Under a contract of the first class above, it is well settled that by the receipt of current dues by the society during the period of the member's delinquency, and before the necessary affirmative action has been taken to terminate the membership, the society

thereby waives its right to declare a forfeiture of such membership.

While the courts have not infrequently used the terms "waiver" and "estoppel" interchangeably, we do not see how waiver, strictly speaking, can have any application to a contract of the second class above. The doctrine of waiver has for its very existence the assumption that by reason of the action of the society the insured has been misled to his prejudice. Familiar illustrations of the application of this doctrine are found in the numerous decided cases, where it has been determined that, by accepting dues or premiums after they were delinquent, the society thereby led the insured to believe that payment on time would not be insisted upon strictly. In such cases the courts have quite uniformly held that the society waived its right to insist upon payment at the appointed time, and if the insured thereafter did not strictly observe the precise time of payment, he ought not thereby be held to forfeit his rights, since he might have complied literally with the terms of his contract but for the course of conduct on the part of the society, which misled him into his delinquency.

But we are unable to see how this doctrine can have any application to the case at bar. Kennedy's delinquency operated *ipso facto* to terminate his membership and to abrogate his contract. His application for reinstatement looked only to a renewal of his membership and a revival or recreation of his contract. Having done everything which he could do, he was still not reinstated, but his reinstatement was thereafter made to depend upon favorable action by the secretary of the grand lodge or body.

Assuming, then, that Hutchinson did just what respondent claims he did do, wherein was Kennedy or his wife, the beneficiary, misled? What more could they have done if Hutchinson had acted differently,—for instance, had said that he did not believe Kennedy would be reinstated? Possibly they could have furnished additional evidence as to the state of Kennedy's health if Hutchinson had expressed to them any doubt as to

the sufficiency of the evidence already furnished; but the un-contradicted evidence is that Hutchinson "had no authority whatever to pass upon the application for reinstatement," and furthermore, since they knew that the application had to be passed upon by the secretary of the grand body and could not become effective until it had received the approval of that officer, it seems impossible that they could have been misled by anything said or done by Hutchinson. Furthermore, it is sig-nificant that, though Mrs. Kennedy was a witness in her own behalf, there is not any suggestion in her testimony that she ever relied to any extent whatever upon the statements made by Hutchinson, or that either she or her husband would have acted differently under different circumstances, further than the bare statement by plaintiff that she followed the instructions of Hutchinson in preparing the application for reinstatement. There is but one conclusion to be drawn from this record, and that is that they were not misled at all, for notwithstanding anything said or done by Hutchinson, the application for rein-statement itself discloses that they knew that in any event Ken-nedy's reinstatement depended upon the approval of his appli-cation by the grand secretary.

We do not mean to say that the doctrine of estoppel, strictly so called, has no application to a contract of the second class above. On the contrary, it is directly applicable. But, assum-ing, which we do not decide, that the allegations of the complaint with respect to waiver are sufficient for a pleading of estoppel, they amount only to a pleading of an estoppel *in pais,* and the proof falls short of establishing an estoppel of that character. With respect to the doctrine of estoppel *in pais* this court in *Finlen* v. *Heinze,* 32 Mont. 354, 80 Pac. 918, quoted with ap-proval from 11 Encyclopedia of Law, second edition, 421, the following: "The most usual application of the doctrine of es-toppel *in pais* arises from the misrepresentation or concealment of material facts on the part of the person to be estopped. Thus it is a well-settled rule of equity which has been adopted by the courts at law that where A has, by his acts or representations,

or by his silence when he ought to speak out, intentionally or through culpable negligence induced B to believe certain facts to exist, and B has rightfully acted on this belief, so that he will be prejudiced if A is permitted to deny the existence of such facts, A is conclusively estopped to interpose a denial thereof.'' The very essence of this doctrine is that the party relying upon the estoppel was misled to his prejudice by reason of the silence of the other party, when in equity and good conscience he ought to have spoken, or by reason of the affirmative acts or conduct of such other party. There is nothing in this record to indicate that either Kennedy or his wife was misled.

It is said, however, by respondent, that if the evidence of Kennedy's good health was not satisfactory to Gregg, he should have called for additional evidence, and by not doing so he tacitly admitted that the evidence upon that subject was sufficient. We do not think this is correct under a contract of this character. Neither do the authorities cited by respondent, as we read them, bear out her contention. The contract of insurance lodged a discretion in the grand body or its secretary, in passing upon the evidence of good health, and in view of Kennedy's own statement in his application for reinstatement that he had been confined to his bed by pneumonia for about three weeks in February and March, 1905, we think it cannot be said, even in view of Kennedy's further statement, ''I claim to feel better at the present time than I have for years,'' that the secretary of the grand lodge ought to have reached a different conclusion upon the application, particularly in view of the testimony of Dr. Moore, a witness for plaintiff: ''Some of the ailments which follow pneumonia are abscess of the lungs, chronic pleurisy, chronic congestion of the lungs, which might finally lead to what is termed fibroid condition of the lungs, which is somewhat similar to miner's consumption that sometimes follows attacks of pneumonia among the miners in this camp.'' And this is true even though Dr. Moore considered Kennedy in good health at the time of his application for reinstatement. From the very fact that these other ailments do sometimes fol-

low attacks of pneumonia, the inference is strong, at least, that different physicians might reasonably reach different conclusions as to the character of Kennedy's risk. In any event, the discretion was lodged in the secretary of the grand body, and there is not anything in this record to show an abuse of such discretion.

But respondent cites numerous cases holding that where an insurance society, with full knowledge of the member's delinquency, accepts current dues, it thereby waives its right to insist upon a forfeiture of the policy because of such delinquency, and that these cases state a correct rule is beyond question. They are applicable to a contract of the first class above. Cases may be found, also, holding that under a contract of the second class, if the society, with knowledge of the delinquency, accepts current dues, it is thereby estopped to claim that a forfeiture had been worked by such delinquency. Within the doctrine last announced respondent claims this case falls. It is contended that Hutchinson was a general agent of the society. In addition to his duties as collector of the local lodge at Butte, he was superintendent of the order for the state of Montana. His duties were to institute new lodges, to visit lodges and work up an interest in the order. It is now said that in view of these facts the receipt by Hutchinson of the dues for the month of June, at a time when he knew that Kennedy was no longer a member of the order, was in fact the act of the society, and thereby the society estopped itself to claim that a forfeiture of Kennedy's membership had been effected by his failure to pay for April and May.

Sections 3091, 3092 and 3093 of the Civil Code provide:

"Sec. 3091. An agent has such authority as the principal, actually or ostensibly, confers upon him.

"Sec. 3092. Actual authority is such as the principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess.

"Sec. 3093. Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess."

There is not anything in this record to show that the society intentionally conferred upon Hutchinson authority to waive delinquency or to receive current dues after Kennedy ceased to be a member of the society; neither is there anything to show that Hutchinson believed he possessed such authority. He says: "I had no authority whatever to pass upon the application for reinstatement."

Instead of the record disclosing a course of conduct on the part of the society which allowed Kennedy to believe that Hutchinson possessed such authority, it does show by Kennedy's application for reinstatement that he knew that notwithstanding anything said or done by Hutchinson, his application had to receive the approval of the secretary of The Grand Fraternity. So far as we know from this record, this was the only instance of the kind known to the society; and, far from there being any ratification of Hutchinson's action in receiving the June dues, the order never actually received them or the delinquent dues for April or May, but immediately upon receipt of the application for reinstatement, which had indorsed upon it a statement of Hutchinson that he had in his possession the dues for April, May and June, which he held subject to the approval of the application by the secretary of The Grand Fraternity, it was disapproved by the secretary, and the money was on July 1st following tendered back to Mrs. Kennedy. The defendant offered to prove, in addition to the foregoing, that the secretary of The Grand Fraternity, on June 24th, the day he disapproved the application, wrote to Hutchinson: "You will please turn the money you are holding for Pat. Kennedy over to him at once." This offer was rejected; and, assuming that the letter was not sufficiently identified and for that reason the court's ruling was correct, still we think there is not any evidence showing or tending to show a ratification of Hutchinson's unauthorized act in taking the June dues. There is not any significance whatever

attaching to his receipt of the April and May dues, since the constitution and by-laws provide that they shall be tendered with the application for reinstatement.

In *Collins* v. *Metropolitan Life Ins. Co.*, 32 Mont. 329, 108 Am. St. Rep. 578, 80 Pac. 609, this court quoted with approval from *Northern Assur. Co.* v. *Grand View Bldg. Assn.*, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213, as follows: "Where waiver is relied on the plaintiff must show that the company, with knowledge of the facts that occasioned the forfeiture, dispensed with the observance of the condition; that, where the waiver relied on is an act of an agent, it must be shown either that the agent had express authority from the company to make the waiver, or that the company subsequently, with knowledge of the facts, ratified the action of the agent."

In our view of the case, the evidence is insufficient to sustain the verdict or judgment.

The judgment and order are reversed, and the cause is remanded, with directions to the lower court to grant the defendant a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.