[No. 5438.]
[No. 3099 C. A.]

## BROWN v. KNIGHTS OF THE PROTECTED ARK.

1. **Insurance — Mutual Benefit Certificate—Forfeiture—Payment of Delinquent Assessments—By Whom Made.**

A by-law of an insurance society provided that, on failure of a beneficiary member to pay his assessments and dues on the first day of each month, he should stand suspended and his certificate should be null and void, but that he might be reinstated within 10 days by payment of the delinquent dues and assessments, and after 10 days and within 30 days by signing, in addition, a health statement. Held, that a beneficiary member, whose certificate was forfeited by his failure to pay dues and assessments on the first day of the month, could not be reinstated after his death within the 10-day period by a tender of the delinquent dues and assessments, since such privilege must be availed of by the member himself during lifetime.—P. 294.

2. **Same—Waiver—Estoppel.**

A beneficiary member of a mutual benefit society was entitled, if alive, to reinstatement on payment of delinquent dues and assessments within 10 days after such delinquency occurred, and the local accountant of the lodge, without knowledge that the member was dead, accepted within that time, from his son, delinquent dues and assessments, which he immediately returned on being informed of the member's death. Held, that there was no waiver of the forfeiture resulting from such delinquency, nor was the association estopped to rely thereon.—P. 295.

3. **Same—By-Laws—Change.**

A certificate of a mutual benefit society provided that it should be forfeited if the member did not comply with the conditions of the constitution and by-laws, and with such laws as were or might thereafter be adopted by the society; and a by-law was subsequently adopted, making assessments and dues

payable on the first day of each month, and declaring that members should stand suspended from that day if dues and assessments were not paid, with the right to reinstatement within 10 days on payment, and within 30 days on a certificate of health in addition. Held, that such by-law superseded one in force at the time the certificate was issued, under which dues were payable on the 15th day of each month and members were not to be suspended for failure to pay until the first day of the succeeding month.—P. 295.

### 4.  Same—Construction—"Liable to Forfeiture."

A certificate of a mutual benefit society provided that all the benefits accruing should be "liable to forfeiture" if the member did not comply with the association's constitution and by-laws; and one of the latter provided that, in case of omission to pay dues and assessments on the first of each month, the member should stand suspended. Held, that the phrase, "liable to forfeiture," must be construed in connection with such by-law, and, thus construed, no affirmative action is required on the part of the association to bar the member's recovery.—P. 296.

### 5.  Same—By-Laws—Amendment—Notice.

In an action on a mutual benefit certificate, the evidence reviewed and held sufficient to establish notice to the member of a by-law imposing more stringent obligations with reference to the payment of assessments.—P. 297.

### 6.  Constitutional Law—Impairment of Obligation of Contract— Vested Rights.

A mutual benefit certificate required compliance with the association's constitution and by-laws then or thereafter adopted. Held, that the repeal of a pre-existing by-law making assessments payable on the 15th day of the month, and providing against forfeiture for nonpayment until after the first day of the succeeding month, by a by-law requiring payments to be made on the first day of the month, and providing for an automatic forfeiture for nonpayment on that day, is not objectionable as impairing the obligation of the member's contract, nor as affecting the vested rights or interests of the beneficiary.—P. 298.

### 7.  Insurance—Ambiguous Contract—Construed Against Insurer.

An ambiguous or doubtful insurance contract which is fairly subject to different interpretations, will be construed most strongly against the insurer. But, where the contract of a mutual benefit association is reasonably certain and plain, the courts have no alternative but to enforce the same when voluntarily entered into by the insured.—P. 298,

*Appeal from the District Court of Pueblo County.*
*Hon. John H. Voorhees, Judge.*

Action by Omie Brown against the Knights of the Protected Ark. From a judgment for defendant, plaintiff appeals.    ·    *Affirmed.*

Mr. JAMES F. DRAKE, for appellant.

Messrs. ELWELL & COLLINS, for appellee..

On the 30th of September, 1901, Samuel A. Brown procured a certificate of insurance from appellee, Knights of the Protected Ark, a fraternal association organized under the laws of the state of Kansas; he was at the time a member of Pueblo Ark No. 37, in this state. By the terms of his policy or certificate he was to pay such dues and assessments as were provided for by the constitution and by-laws. Upon satisfactory proof of his death, his wife, Omie Brown, the beneficiary, was to receive $200.00 per year, payable quarterly, for ten years, and thereafter so long as she remained a widow. On August 6th, 1902, said Samuel A. Brown departed this life, his widow, the said Omie Brown, surviving him.

The certificate of insurance contained, among other things, the following: "All the provisions contained in the constitution and by-laws of the Supreme Ark and all the benefits accruing from said certificate shall be liable to forfeiture if said member shall not comply with the said conditions and said constitution and by-laws and with such laws as are or may hereafter be adopted by the Supreme Ark or by the Subordinate Ark, of which he is a member."

When said certificate of insurance was issued to Brown, the by-laws of the association in force contained the following provision: "Assessments and dues as per schedule are due and payable without

notice on the 15th day of the month, but a member will not be suspended for nonpayment until after the first day of the succeeding month." Thereafter and on May 5th, 1902, a new constitution and set of by-laws was adopted by the Supreme Ark. Among the new by-laws was the following: "Should a beneficiary member fail to pay his or her assessments and dues on or before the first day of each month, the said member shall stand suspended and cease to be entitled to any benefits, and his or her certificate shall at once cease to be in force and shall become null and void and all payments to this order shall be forfeited; provided, that said member may reinstate within ten days from the date of said suspension by the payment of delinquent dues and assessments, and after ten days and up to thirty days said member may be reinstated by the payment of dues and assessments and signing a statement of sound bodily health.".

At the time of Brown's death, viz., August 6th, 1902, his monthly assessment and dues payable on the 1st of August, had not been tendered and remained unpaid. The treasurer or local accountant of the association was accustomed to receive the payments up to the 10th of each month, the member then becoming reinstated by virtue of said last mentioned by-law. And on the said 6th of August, 1902, the son of deceased paid to the local accountant the assessment and dues thus remaining unpaid; immediately after the same had been received he informed the accountant that his father had died a few hours before; thereupon the accountant stated that he could not receive such dues, as deceased had been suspended as a beneficiary member for nonpayment thereof on the first of the month; the money was at once returned to the son and the receipt given him was destroyed. At the time of receiving this money the

local accountant had no knowledge either of the sickness or death of Brown.

The association, relying upon the suspension of Brown and the cancellation of his certificate, declined to recognize any claim or right of his widow based upon the said certificate of insurance, and on January 17th, 1903, she began the present action. An answer and replication were afterwards filed and the issues were thus made up for trial. The parties thereupon entered into an agreed statement of facts, the substance of which, in so far as material, is above set forth. By agreement a jury was waived and the cause was tried to the court. The same having been duly argued and submitted, judgment was entered dismissing the complaint. To review that judgment the present appeal was taken.

Mr. JUSTICE HELM delivered the opinion of the court:

The decision of this case by the court below and the review here require an interpretation of the original certificate of insurance, coupled with the by-laws relating to suspension for nonpayment of assessments and dues.

The by-law in force when the contract was entered into directed that such payments be made on the 15th of each month; but no suspension of the member for failure in this regard took place till the first day of the next succeeding month. Afterwards, however, and before the death of Brown, this by-law was, by the Supreme Ark, repealed, and another was substituted therefor.

The by-law thus substituted provided that upon failure of the beneficial member to pay his assessment and dues on the first day of each month, he should stand suspended, his certificate should cease to be in force and become null and void, and all pay-

ments previously made should be forfeited; but, if within ten days after such suspension, the member paid in the requisite sum, his act operated to reinstate him.

Obviously, if the first of the foregoing by-laws can be considered in force at the time of Brown's decease, there was no suspension of his contract or membership; it was not even necessary for his son, or for anyone else, to have paid or tendered the assessment and dues for August; as the same were not payable until the 15th of that month, some nine days after his death. And plaintiff should have succeeded in her action.

On the other hand, it is equally clear that if the by-law last above referred to was in force at the time of Brown's death and was not in some way modified or limited by the certificate of insurance, plaintiff was not entitled to recover. For by that provision the failure to make payment of the assessment and dues on the first of August operated in and of itself to nullify the contract, cancel his insurance and suspend his beneficiary membership. The ten days' provision could not avail plaintiff, because no reinstatement of Brown could take place after his death; the regulations contemplating payment and acceptance of the assessments and dues subsequent to the first of the month must be availed of by the member himself during his lifetime. The language employed in the by-law forbids the view that his beneficiary could, after his death, take advantage of these reinstatement clauses.—*Carlson v. Supreme C. A. L. of H.*, 115 Cal. 416; *Modern Woodmen v. Jameson*, 49 Kan. 677; *Maginnis Estate v. N. O. Cotton, etc., Assn.*, 43 La. Ann. 1136; *Rood v. Ry. P. & F. Con., etc.*, 31 Fed. 62; *Klein v. Ins. Co.*, 104 U. S. 88.

And although it appears that the local accountant at first received the amount from Brown's son after

Brown's death, yet, owing to his ignorance of Brown's illness or death at the time of such acceptance, and his prompt action in returning the money, no waiver by defendant of the forfeiture took place, nor did any estoppel to the assertion of such forfeiture arise.—*Mill v. N. C. Life Ins. Co.*, 110 Ill. 102.

Counsel for appellant contends that the later by-law, the one adopted on the 5th of May, 1902, did not supersede the by-law in force when the contract was made and does not control the rights of the parties in the present action. This contention cannot rest upon the view that the original by-law was embodied in the contract in such a way that defendant was powerless to make reasonable changes for the benefit of the association without the consent of the insurer. The certificate of insurance itself expressly covers such a contingency. It declares that the conditions named therein are not only subject to all existing provisions of the constitution and by-laws of the Supreme Ark, but that they are subject to such laws as might thereafter be adopted by the Supreme Ark or by the Subordinate Ark to which Brown belonged. So that by the very terms of his contract he bound himself and his beneficiary to accept and be governed by such changes or modifications thereof as should take place through the subsequent adoption of new regulations or by-laws; the only limitations being that these changes must be reasonable and that they cannot destroy contractual rights vested before their adoption.—*Woodmen of the World v. Woods*, 34 Colo. 21; Bacon's Benefit Societies & Ins., § 185, and numerous authorities cited. And it follows that the by-law of May 5th, 1902, determines the rights of the parties unless its rejection can be placed upon some other ground.

But counsel further insists that such other ground does exist in the certificate of insurance itself.

He calls attention to the following language embodied therein: "And all the benefits accruing from said certificate *shall be liable* to forfeiture if said member shall not comply with the said conditions," etc. And he urges the view that the phrase "liable to forfeiture" requires affirmative action on the part of the association, annulling the contract for nonpayment of assessments and dues; also, that until such action is formally taken and the certificate is thus formally canceled, the right either of the member himself or of his beneficiary, in the event of his death, to pay the amount due and enjoy the benefits of the contract, remains in full force and virtue.

This argument is ingenious, but we cannot regard it as sound. The phrase "liable to forfeiture" must be construed in conjunction with each and all of the remaining portions of the contract. And so construed, its meaning is plain. His default subjects the interest of the insuring member to forfeiture in the manner provided by the existing constitution and by-laws. And if either of those documents declares that the default shall itself instantly operate as such forfeiture, nothing further is necessary. Notwithstanding the language above quoted from the insurance certificate, no affirmative action by the association in relation to the particular default is required to cancel the contract and deprive the defaulting member of his rights thereunder.—*Kennedy v. Grand Fraternity,* 92 Pac. 971; *Beeman v. Supreme Lodge S. of H.,* 215 Pa. St. 627; *Supreme Lodge K. of H. v. Keener,* 6 Tex. Civil App. 267, and other cases, *supra.*

To hold otherwise would virtually destroy this feature of the contract; as no other provision exists regulating the forfeiture of beneficiary memberships for nonpayment of assessments and dues. The whole subject is dealt with in the by-laws referring thereto; and the intention of the contracting parties to have

such by-laws control the matter of cancellation or annulment for nonpayment of assessments and dues, is too plain to admit of serious doubt.

Finally, counsel strenuously argues that notice of the new or amended constitution and by-laws was insufficient. We have already virtually disposed of this contention. We cannot agree with counsel when he assumes· that, by the exhibit referred to in paragraph 4 of the agreed statement of facts, it necessarily appears that printed copies of those documents were not delivered to the local lodge until after the 22d of October, 1902. The certificate stating that date deals only with certain amendments to the new constitution and by-laws, not referring to the payment of assessments and dues, then adopted; the same being printed on one side of a single sheet and evidently being pasted into copies of these documents published at some previous date. Besides, the same paragraph expressly declares that, by a circular letter, the lodge to which Brown belonged was apprised, in May, 1902, of the adoption of the new or amended constitution and by-laws. Also by paragraph 11 of said statement it is admitted that the local accountant was receiving dues between the 1st and 10th of the month, and that he extended this courtesy to Brown; this act was in harmony with and a virtual recognition of the new by-law under consideration. And, finally, by paragraph 14, it appears that there was delivered to each member, including deceased, monthly, a copy of the "Ark Light," a periodical or paper published by the association. This periodical carried permanently a printed interpretation of the latter by-law. According to such interpretation it appeared, among other things, that the ten days or other time beginning with the first of the month when the assessment and dues remained unpaid, constituted a period during which the member and his

beneficiary were without protection; that is to say, if he made such payment on the tenth day, while he paid the full amount for the entire month, yet he would in reality have been insured for but two-thirds of the month. This interpretation strongly emphasized the fact that failure to pay on the first of the month produced an immediate cancellation of the contract and nullified all rights thereunder.

*Sexton v. National Life Ins. Co.*, 90 Pac. 58, decided by this court, is not inconsistent with the foregoing views.

Defendant in error in that case was an ordinary life insurance company, and, though denominated mutual, yet in its organization and method of transacting business, it was closely allied to the old line companies; appellee here is a fraternal benefit society and its organization and methods are in many respects widely different; this is particularly true in relation to assessments and dues and their collection.

Again, in that case, unlike the present, the contract of insurance which in form was an ordinary policy, contained no provision expressly subjecting the same to changes in the constitution and by-laws. The alteration here made did not impair the obligation of the contract. Nor did such change nullify or affect any vested right or interest of appellant.

We regret the conclusion to which the foregoing discussion leads. It works a hardship in the case at bar. If the contract were ambiguous or doubtful and were fairly subject to different interpretations, it would be construed most strongly against the insuring association. But courts are required to enforce these contracts as they are written; in this respect they do not materially differ from other contracts; when they are voluntarily entered into and their terms are reasonably plain, the courts have no alternative; the fact that a particular provision may

operate harshly or inequitably in particular cases does not justify a judicial disregard or reconstruction of the same.

The judgment must be affirmed.    *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE BAILEY concur.