MARY B. CHASSON

*vs.*

THE SOVEREIGN CAMP OF THE WOOD-
MEN OF THE WORLD.

Penobscot.    Opinion May 14, 1928.

*George E. Thompson,*
*Ross St. Germain,* for plaintiff.
*Gillin & Gillin,*
*James G. O'Connor,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, BARNES, BASSETT, PATTANGALL JJ.

PHILBROOK, J.   This case comes from the Superior Court of Penobscot County and by agreement of counsel is reported to the law court for its determination upon so much of the evidence as is legally admissible.

It is an action brought to recover the sum of $1,000 which the plaintiff says is due by reason of a contract of life insurance entered into between Ceril Chasson and the defendant. The latter declines to pay on the ground that the insured failed to comply with the obligations resting upon him by the terms of the contract whereby the policy lapsed and the obligation to pay the beneficiary ceased.

It is admitted that the plaintiff was the wife of the insured at the time when the policy of insurance was issued by the defendant, that the insured died February 22, 1923, that at the time of bringing the action the plaintiff was the widow of the deceased, and that she is the person named as beneficiary in the policy.

The defendant is a fraternal beneficiary association located at Omaha, Nebraska, organized and incorporated under the laws of that state, duly and regularly admitted and licensed to transact

business as a fraternal beneficiary association in the State of Maine.

The right of the plaintiff to recover is contractual, depending upon the terms of the contract of insurance and the fulfillment of those terms by the insured and the insurer.

A contract of insurance, in common parlance, is denominated an insurance policy but in the case at bar it is called a certificate. The defendant obligated itself to pay the sum of $1,000 to the beneficiary upon satisfactory proof of the death of the insured while in good standing. It is distinctly set forth in the contract of insurance that the certificate is issued by the insurance company, and accepted by the insured, subject to all the conditions set forth therein and the provisions of the constitution and laws of the company in relation to membership on the second and third pages of the policy. The articles of incorporation, the constitution and laws of the company, all amendments thereof, the application for membership, the medical examination signed by the applicant, denominated in the policy as "member," constitute the agreement or contract between the defendant and the insured. On the face of the policy is a provision that should said certificate be forfeited for any cause, acceptance of any payment for or from the member or other act by any camp officer or member of the society after said forfeiture shall not operate as an estoppel or as a waiver of the terms of the policy. Among the conditions found on the third page of the policy are these: that the member shall pay the clerk of his camp certain assessments and camp dues, as required by the by-laws of his camp, and if he fails to make any such payment on or before the last day of the month he shall stand suspended, and during such suspension his beneficiary certificate shall be void; that no camp shall pay the sovereign camp dues or assessments of any member unless the same is actually transferred from the camp's fund into the hands of the clerk on or before the last day on which such assessment is due and payable, and the clerk shall enter such payment upon his records, showing the day when it was paid by the camp; that the clerk of the camp shall not by acts, representation, waivers or by vote of his camp have any power or authority to bind the sovereign camp except as provided in the policy; that the clerk

of the camp shall not pay the assessment or dues of any member with camp funds or his own funds unless the same is paid on or before the last day on which such assessment is due and payable, and must make a record of the time of such payment, which payment cannot be made by the clerk or the camp after the member becomes suspended.

There are provisions in the policy for the reinstatement of suspended members among which is a provision that if the suspended member should pay all arrearages and dues to the clerk of his camp within ten days from the date of his suspension, and if he be in good health at the time and continues in good health for thirty days thereafter (not citing provisions in regard to the excessive use of intoxicants or narcotics) he shall be reinstated and his beneficiary certificate again become valid; but any attempted reinstatement shall not be effective for that purpose unless the member be in fact in good health at the time and continue in good health for thirty days thereafter.

It is also expressly stated in the certificate that no officer, employee, or agent of the sovereign camp, or of any camp, has the power, right, or authority to waive any of the conditions upon which the beneficiary certificate is issued or to change, vary or waive any of the provisions of the constitution and laws of the society, nor shall any custom on the part of any camp or any number of camps with or without the knowledge of any sovereign officer have the effect of so changing, modifying, waiving, or foregoing such laws or requirements.

Neither the certificate nor any provisions of the constitution or by-laws of the defendant require notice from it to the insured as to the time when assessments and dues become payable and as to that time the member is therefore obliged to take due notice and govern himself accordingly. The failure to pay these assessments and dues at the required time automatically works a suspension of membership without notice to the member and after suspension reinstatement can follow only upon the terms and provisions of the certificate.

At the time of his application for membership the insured was a resident of Bridgeport, Connecticut. Plaintiff testified that she and her husband lived in Bridgeport not quite a year after the

certificate was issued; that she personally paid the assessments and dues to the camp clerk or collector while they lived in Bridgeport. From Bridgeport they moved to Old Town, Maine. The plaintiff further testified that after she and her husband came to Old Town she took the receipt book, issued by the defendant, to the post office, had a money order made, sent the book and money order to the Clerk of the camp at Bridgeport who returned the book to her.

The receipt book for the year 1922, Plaintiff's Exhibit 4, shows no payment of assessments and dues for the months of September, October, November and December of that year. Receipt book for 1923, Plaintiff's Exhibit 5, indicates that assessments and dues for January, February and March of that year were received by the camp clerk at Bridgeport but the dates of such payments do not appear although the clerk's signature acknowledg- payment is written in such form as would seem to indicate that these three payments last named were received at one and the same time.

In January and February of 1923 the insured was supported by the city of Old Town as an Orono pauper. His wife, the beneficiary, was in Canada at that time. She testified that she had paid nothing by way of assessment or dues on the policy for the three months just prior to her husband's death. On being asked if she paid any assessment on the policy after July, 1922, she answered "I know I made some payments, but I don't remember when they were."

It appears that on the very day of the death of the insured Mr. Llewellyn F. Crane, Chairman of the Board of Selectmen at Orono, and one of the overseers of the poor, wrote to the defendant company inquiring as to the membership of the insured at that time but later correspondence would seem to indicate that Mr. Crane's letter contained no information as to the health of the insured at that time or whether he was living or dead. On the week following the death of the insured Mr. A. G. Averill, a practising attorney in Old Town, on request of the plaintiff, wrote to the camp collector to ascertain if the policy or certificate was still in effect. His letter, Plaintiff Exhibit 6, was dated March 1, 1923, and reads as follows:

"The assessment of Ceril Chasson under Woodmen policy, Bridgeport Camp No. 95, number of Policy R213656B, as I understand is in arrears for a few months. Kindly let me know whether you have kept the assessment up yourself or whether you have dropped him from the rolls. If you have kept him I will send you the money if you will let me know how much."

Here again there was a careful omission to state the fact that Chasson was dead at the date of Mr. Averill's letter.

In reply to Mr. Averill the camp clerk said:

"I am thankful that some responsible person is interesting themselves in this Woodman insurance which is as good as a Government bond. I must say to you that I have had lots of trouble and annoyance trying to keep this protection in force during the last few years. My books shows the last payment made was for July 1922. There is now due for August, September, October, November, December, 1922, January, February, and March 1923, $2.70 per month amounts to $21.60 now due to April 1, 1923. Kindly get that money at once. The reason I speak this way is because I lapsed the business a few days ago upon giving up all hope of hearing from anyone in Old Town again, believing that they had left for parts unknown to me. All this money was paid out of my pocket but the last month. I have thirty days to revive the business back into full force so please be prompt in your remittance."

In answer to this letter from the camp clerk Mr. Averill wrote on March 6, 1923, as follows:

"Yours of the third received and in answer am forwarding you my check for $21.60 to reimburse you for the amount you have put in, as per your letter, in keeping up policy number R213656B, Ceril Chasson. You state that this policy has not been dropped by you and we are glad to reimburse you for what money you have put in. Kindly forward receipt to April first."

It is still a notable fact that Mr. Averill's letter written more than a week after Chasson had died contained no statement or information that Chasson was dead and it was not until June 15, 1923, that Mr. Averill wrote to the home office of the defendant giving the date of the death of Chasson.

The testimony of Mr. Farley, the local camp clerk, could not

be obtained for use at the trial below because of his death.

The whole record discloses, among other things, three distinct and decisive facts:

*First.* The failure of the insured for some months previous to his death to pay his dues and assessments so that he became automatically suspended from membership.

*Second.* That the camp clerk attempted to keep the assessments and dues of Chasson paid, in strict disobedience and disregard of the certificate, paying the money out of his own pocket.

*Third.* That in the attempt to reinstate the membership of Chasson, his beneficiary, after his death, tendered payment of the debt which was owed to the camp clerk individually which payment was forwarded to the home office of the defendant and in part kept by the defendant without knowledge of the fact that Chasson was dead.

From the evidence in the record, and in view of the provisions of the certificate already referred to, the first fact would seem to be so fully established, and control of that fact so distinctly provided for in the certificate, that further discussion upon this point is quite unnecessary.

Relative to the second fact it should be observed that not only does the certificate forbid a camp clerk, out of his own pocket, to pay assessments and dues of any member, but such a rule is in harmony with the policy and provisions of mutual benefit associations. Being a mutual society each member has financial obligations to perform, and is protected by the constitution and laws of the society from having his own interests jeopardized by keeping a member on the rolls, when, by virtue of the contract of insurance, that member is no longer entitled to the benefit of his certificate, and his beneficiary has no further right to demand that mutual members shall contribute to the payment of an obligation which no longer exists. It must be quite clear, therefore, that the payment of assessments and dues by a camp clerk out of his own funds, in behalf of the insured, cannot avail the plaintiff in her attempt to collect the beneficial payment.

The third fact seems to be controlled by decisions already made in this and other states.

In *Gifford* v. *Workmen's Benefit Association*, 105 Me., 17,

questions arose similar to those in the case at bar. It was there held that the failure of the insured to pay his assessments caused a suspension of the insured from all right, benefit, and privileges of the association, without notice or other action on the part of the insurance company, because the provision for suspension was self executing, and the failure of the insured to pay the assessments having worked his suspension, and forfeiture of the benefit certificate, such suspension continued until the member did the act required for his reinstatement. Being dead he could do no act to reinstate himself and the act of another could not reinstate him after his decease. It was also there held that the right of a member to reinstatement was a purely personal right which did not survive nor pass to his representatives or beneficiaries under the certificate.

In the case to which we have been referring it was claimed, and the plaintiff here claims, that the insurance society waived forfeiture by receiving overdue assessments from another person after, but without knowledge of, the death of the insured. "A waiver is a voluntary relinquishment of some known right, benefit or advantage and which, except for such waiver, the party other wise would have enjoyed. Knowledge of the existence of the right, benefit or advantage, on the part of the party claimed to have made the waiver, is an essential prerequisite to the relinquishment." *Gifford* v. *Benefit Association,* supra. One cannot be said to waive that which he does not know. *Marcoux* v. *St. John Baptist,* 91 Me., 250. When a portion of the money advanced by Averill was received and retained by the defendant it had no knowledge of the death of Chasson. Having no knowledge of that fact it cannot be said to have waived the suspension; *a fortiori* it cannot be said that it waived such suspension when payment of the assessments and dues were made, or attempted to be made, by some one in behalf of the deceased who alone had the right to seek reinstatement.

In L.R.A. (N.S.) Vol. 38, at page 576, it is said that in most instances in which the element of death of the member entered into a decision of the question of waiver of forfeiture, death precludes waiver. In *Brown* v. *Knights of Protected Ark,* 43 Colo., 289, 96 Pac., 540, it was held that acceptance of arrearages in ignorance of a member's death will not constitute a waiver of forfeiture

where they are promptly returned upon learning of the fact, although the tender and acceptance was within the time during which the member, if alive, would be entitled to reinstatement, the rule being that there can be no reinstatement after death. In *Catholic Order* v. *Lynch,* 126 Ill. App., 439, it was held that where a suspended member dies before the acceptance of overdue assessments, such acceptance will not constitute a waiver of forfeiture where the laws of the order (as in the case at bar) require good health as a condition of reinstatement. In a case somewhat more akin to the case at bar, *Bagley* v. *Grand Lodge*, 31 Ill. App., 618, (although reversed on other grounds) it was held that where the constitution of a mutual benefit society provides that the beneficiary's certificate, suspended by reason of non-payment of assessments, may be renewed if the member be alive, upon certain conditions, the receipt of overdue assessments by an officer of a subordinate lodge does not waive the forfeiture, if the member is not living when the money is paid, especially where, when the money is paid, the death of the suspended member is concealed from the officer who takes the money. In *Knights of Columbus* v. *Burroughs,* 107 Va., 671, 17 L.R.A. (N.S.), 246, 60 S. E., 40, the effect of the by-laws limiting the power of a local council of a beneficial association was very carefully considered. In that case the member had failed to pay his assessments as required by the constitution and by-laws, and had ipso facto forfeited his membership. The subordinate or local council undertook to make good his delinquincy without complying with the by-laws of the society. Upon careful consideration and examination of many authorities it was held that the local council, in its undertaking to make good the delinquincies of its members, was acting without authority; that in so doing it was the agent of its members and not of the society; and that the society, having received the money in ignorance of the facts, had not waived the forfeiture, and was not by its conduct estopped to set it up as a defense to the action. In *Modern Woodmen* v. *Tevis,* 54 C.C.A., 293, 117 Fed., 369, the powers and duties of the clerk of a local camp in receiving arrearages from a suspended member, and the effect of his action, in receiving such arrearages in violation of the by-laws, upon the rights of the society or head camp are con-

160

sidered; and it was there held that the authority of the clerk was limited by the by-laws, that the members and beneficiaries are charged with knowledge of these limitations, because they are a part of the contract; and that the clerk of the local camp had no authority by contract, estoppel or waiver to bind the society to its members or beneficiaries, either by extending the time of payment of a benefit assessment, or by waiving default in its payment, or by reinstating a suspended member without a warranty of good health.

In Am. & Eng. Ann. Cas., Vol. 17 at page 1175, will be found an annotation of *Gifford* v. *Benefit Association,* supra, where it is stated that the case is in accord with the views generally expressed that the right of a member of a beneficial association to be reinstated to the privileges of the society does not survive his death. A note upon earlier cases along the same line may be found in Am. & Eng. Ann. Cas., Vol. 6, page 698, where by a number of cases there cited it is held that the right of reinstatement after suspension from a beneficial association is a right that is personal to a member and does not survive his death. In a more recent case, *Grand Lodge* v. *Taylor*, 44 Colo., 373, 99 Pac., 570, it was held that a member of a beneficial association who was suspended by reason of non-payment of assessments and dues cannot be reinstated after his death and a tender of the overdue assessment does not restore his beneficiary to the privileges of the society. In *Brown* v. *Knights of Protected Ark,* supra, the court held that the regulations contemplating payment and acceptance of assessments and dues must be availed of by the member himself during his life time and that his beneficiary could not, after his death, take advantage of any reinstatement clause.

In view of the authorities which we have cited we hold that Chasson was suspended from membership in the defendant order at the time of his decease by reason of the non-payment of assessments and dues in accordance with his certificate and the constitution and by-laws of the society; that any attempt to reinstate him after his decease was fruitless and that there is no rule of waiver or estoppel which prevents the society from defending as it has done.

*Judgment for the defendant.*