CLAYTON et al. *v.* CLAYTON, HEIR, etc

1. A decree rendered upon constructive service, under the provisions of the statute (R. S., p. 95, § 15), is provisional only ; it is subject upon petition of the defendant within the time limited to be modified or vacated upon a hearing on the merits.   The section contemplates cases where there has been constructive service only, not cases of defective constructive service ; it affects the decree as a final decree, not as a valid decree.

2. It is well settled that the jurisdiction of a court may be the subject of inquiry where its record is sought to be interposed by a party claiming a benefit therefrom.

3. Where by statute constructive service by publication is substituted for personal service, and the court proceeds against an absent defendant, not a citizen of the State, the statute must be strictly pursued.

4. The return of summons *non inventus* on the same day it was issued will not support a notice by publication, and the court has no authority to proceed to hear and determine the cause ; and where the defendant in such record objected to its introduction as evidence against her in another action upon the ground that the court had no jurisdiction to render the decree therein, *held*, that the objection was well taken.

5. Marriage may be proved in civil cases other than actions for seduction, by reputation, declarations, and conduct of the parties, and other circumstances usually accompanying that relation.

6. Where a portion of an invalid record was offered in evidence, and the objection made did not challenge its validity but was based upon untenable grounds, *held*, that the portion offered was properly admitted, and, *held*, that there was no rule requiring the introduction of the whole record by the party who sought to avail himself of a part of it only.

*Appeal from District Court of Gilpin County.*

EJECTMENT — Declaration ordinary form claiming as heir at law ; plea, general issue   On the first day of March, A. D. 1867, James W. Clayton procured summons to be issued out of the office of the clerk of the district court of Gilpin county, against Sarah A. Clayton, his wife, on a bill for divorce.   The respondent was a non-resident, and on the same day the summons was issued it was returned *non inventus* by the sheriff.   The complainant thereupon procured an order of notice by publication requiring the respondent to appear and answer at the ensuing April

term. On the fourth day of April the bill was taken *pro confesso*, and reference to the master ordered to take proof. On the twenty-sixth day of June following, it being one of the days of the April term, the report of the master was filed, and on that same day a decree was signed granting a divorce in accordance with the prayer of the complainant's bill. The only witness produced before the master, as appears from the report, was the complainant, who, being duly sworn, testified:

" My name is James W. Clayton, and I am the complainant in this cause; reside in Nevada, in Gilpin county, Colorado Territory; the defendant, Sarah A. Clayton, and I were married on the 3d day of May, A. D. 1855; I have resided in this, Gilpin county, since the summer of 1860; the defendant came to this county with me in April, 1862, and resided here with me until the fore part of October of the same year, and the defendant being dissatisfied with the country, I took her back to Illinois in October, 1862; she did not seem more dissatisfied with the country than any other; she has since October, 1862 (except a short time spent in Eastern Ohio) resided in the State of Illinois; two years ago the spring last past, I was in Illinois, where the defendant resides, and asked her to come to Colorado Territory and live with me, and she refused so to do, and still continues to live separate and apart from my house; I have always been able and willing to provide and furnish the defendant with a good and comfortable home, and supply and furnish the same in a comfortable manner and always did while the defendant lived with me, provide a comfortable house and home for her, and in all respects provided her from the day of our marriage, until she neglected to live with me, with all the necessaries and comforts of life, and in all respects treated her in a kind, considerate manner, as a husband should treat a wife."

At the April term, A. D. 1876, the appellee as the heir at law of James W. Clayton, commenced this action in ejectment in the district court of Gilpin county, against Sarah

A. Clayton, administratrix, and James Clark administrator, of the estate of James W. Clayton, deceased, to recover possession of a certain lode claim, mill site and other property, in Nevada mining district. On the trial in the district court, the first witness, A. M. Jones, called on behalf of the plaintiff, testified as to the possession of James W. Clayton in his life-time, of the property in dispute, and that he knew Sarah A. Clayton, the plaintiff. " James W. Clayton's first wife."

The plaintiff then offered in evidence the Master's report, containing the deposition of James W. Clayton, as above set forth. The defendants objected and alleged as the grounds of their objection, that *the statements of Clayton could not bind them, the defendants*, and that, if the plaintiff put in part, she must put in the whole record and testimony; the objection was overruled and the defendants excepted. After reading the Master's report, the witness Jones was recalled and testified: " I know the Sarah A. Clayton spoken of in this testimony, who lived with James W. Clayton in 1862, called his wife. She lived with him. I lived within two hundred or three hundred feet of them."

Question—" Did Mr. Clayton call her his wife ? "

To this question defendants objected, because it was " not the proper way to prove that the plaintiff was ever the wife of James W. Clayton." The court overruled the objection and the defendants excepted.

Answer—" He called her his wife. I was in the house frequently. They had one child, which they treated as their own child. Mr. Clayton is reported to have been killed down the Platte."

The plaintiff then called James Clark, who testified :

" I am, I suppose, one of the defendants. I knew James W. Clayton in his life-time. Mrs. Clayton and myself are the administrators of his estate. I knew the mill site occupied by him in his life-time. He occupied it from 1860 until he was killed in 1874. He also occupied all the property described in the declaration as being on the American Flag

lode, for same length of time. Myself and Mrs. Clayton are now exercising acts of ownership over the property; have done so since our appointment in December, 1874. I know Sarah A. Clayton, the plaintiff, his first wife, but not very well. Saw her a few times; saw her and Mr. Clayton at his house. I think they had one child." Defendants objected to statement of witness that he " knew Clayton's first wife, this was not the way to prove the marriage."

George K. Sabin was called for the plaintiff, and testified: "I knew James W. Clayton and Sarah A. Clayton. I lived in Nevada from 1860 to 1865."

*Cross-examined:* "I do not know what you mean by the first and second Mrs. Clayton. I know the present Mrs. Clayton, one of the defendants. Mr. Clayton treated her as his wife. I have been at their house often since he was married to the present Mrs. Clayton, defendant. He was living with her at the time of his death. They lived together until he was killed."

The defendants here admitted the *locus in quo* to be as laid in the declaration, and the plaintiff rested. Defendants then moved the court for a nonsuit " because plaintiff has not proved that she was the wife of James W. Clayton in his life-time, and because the proof was not sufficient to maintain the case on her part."

The court overruled the motion, to which the defendants excepted.

The defendants, to maintain the issue upon their part, then offered in evidence the decree of divorce rendered on the 26th day of June, 1868, between James W. Clayton and the plaintiff.

The plaintiff objected, " because the court that rendered this decision had no jurisdiction of the person of Sarah A. Clayton, and the record so shows, and the decree for that reason is absolutely void, and furnishes no protection to the defendants in this cause, and they must first show what proceedings were instituted to show upon what this decree is based."

The objection was sustained, and the defendants excepted. The defendants then offered the record in evidence, beginning with the summons, to the introduction of each part as offered, the plaintiff specifically objected, the objections were sustained and exceptions reserved by the defendants. The defendants then offered in evidence the following certificate:

"GOLDEN CITY, C. T., *Sept.* 3, 1868.

This certifies that I this day joined in matrimony James W. Clayton and Sarah A. Slate, both of Colorado.

Signed,        B. T. VINCENT, P. E. Denver Dist."

And properly certified as being recorded in book N, page 4, records of Jefferson county, November 20, 1868, under the hand and seal of the county clerk of said county, to which plaintiff objected and the court sustained the objection; the evidence was excluded and defendants excepted.

The plaintiff made no objection that it was not the original, and admitted that B. T. Vincent was authorized to perform the marriage ceremony, and that the above-named Sarah Slate is one of the defendants herein, now called Sarah A. Clayton, and that she and James W. Clayton lived together as man and wife to the time of his death; also, that James Clark and Sarah A. Clayton have been duly appointed and qualified as administrator and administratrix of the estate of James W. Clayton, deceased.

Upon the conclusion of the testimony the defendants requested the court to give the jury the following instruction:

"That the plaintiff in this case cannot attack the decree rendered in the case of James W. Clayton against Sarah A. Clayton at the May term, A. D. 1868, of the district court of Gilpin county in this suit, and if defendant in that suit was not summoned or notified, as prescribed by the statute then in force, yet the defendant not having attempted to review or reverse such decree or in anywise to annul the same, and more than three years since its rendition having

elapsed, it must now, so far as the defendants named in the declaration are concerned, be deemed and adjudged confirmed against such defendant." The court refused to give such instruction, and defendants excepted.

The court instructed the jury to find the defendants guilty and that the plaintiff was the owner of and entitled to the possession of one undivided half of 150 feet in length of the lode claimed and the mill site as described in plaintiff's declaration, and that they should find the defendants not guilty as to the other property described, and the jury so found. A motion for a new trial was entered and overruled and judgment rendered on the verdict. The defendants appealed to this court.

Messrs. H. M. & W. TELLER, for appellants.

Mr. L. C. ROCKWELL, for appellee.

ELBERT, J. Under the provisions of section 15 of the Chancery Act (R. S., p. 95), a decree rendered upon constructive service is *provisional* only. Although final in form, it is not so in fact, but is subject, upon petition of the defendant within the three years, to be modified or vacated, upon a hearing upon the merits. At the expiration of the three years, there being no interposition by the defendant, it is confirmed to the extent that any defense on the merits is precluded. *Lyons et al.* v. *Robbins*, 46 Ill. 277 ; *Southern Bank, etc.* v. *Humphrey*, 47 id. 227 ; *Sale* v. *Fike*, 54 id. 292 ; *Lawrence* v. *Lawrence*, 73 id. 577.

The section has in contemplation cases where there has been constructive service *only*, not cases of defective constructive service. It affects the status of the decree as a final decree — not its status as a valid decree. In this view the section has no bearing upon the question of the admissibility in evidence of the record in the divorce suit instituted by James W. Clayton against the appellee.

Under the rulings in the case of *Palmer* v. *Cowdrey*, 2 Col. 1, and *Vance's Heirs* v. *Maroney (ante,* p. 47), the

return of the summons in the divorce case before the return day would have been fatal on review by an appellate tribunal. It was there held that a return *non inventus* before the return day of the writ would not support a notice by publication, and left the court without authority to proceed to judgment. Without questioning the rulings in these cases, counsel for appellant insist that the record cannot be attacked collaterally.

It is well settled that the jurisdiction of a court may be the subject of inquiry when its record is sought to be interposed by a party claiming a benefit therefrom. *Williamson* v. *Berry*, 8 How. 541.*

Where, by statute, constructive service by publication is substituted for personal service, and a court proceeds against an absent defendant, not a citizen of the State, the provisions of the statute must be strictly pursued. The rule is essential to the protection of parties without the jurisdiction of the court.

Whether under such a statute the record must show affirmatively the jurisdictional facts, or whether in the silence of the record any presumption can be indulged to support the judgment of a court of general jurisdiction, we need not determine. Clearly, where the record shows affirmatively, want of jurisdiction, no presumption can be indulged. *Galpin* v. *Page*, 18 Wall. 365 ; S. C., 3 Saw. C. C. R. 117.

The invalidity of the record offered in evidence in the case at bar was self-established. It shows affirmatively the non-residence of the defendant, and the return of the summons *non inventus*, on the same day it was issued. In such case the publication of notice was insufficient under the statute to vest the court with authority to proceed to hear and determine the cause, and it was competent for the defendant to object that the provisions of the law under which a decree had been entered against her had not been pursued, and that the court rendering the decree had no jurisdiction. The record offered was properly rejected.

That hardship may result to parties acting in good faith

·upon such a decree cannot avail against the greater hardship of concluding parties by adjudications of their most sacred rights in proceedings of which they have no actual notice, and to which they have never appeared.

The evidence that James W. Clayton lived with the plaintiff and recognized her as his wife, was admissible to establish that relation. Marriage may be proven in civil cases, other than actions for seduction, by reputation, declarations, and conduct of the parties, and other circumstances usually accompanying that relation. 2 Greenl. Ev., §§ 461, 462, and cases there cited.

For the purpose of showing the marriage of the plaintiff with James W. Clayton, the report of the master in the divorce suit containing the written examination of James W. Clayton under oath was offered in evidence by the plaintiff and admitted by the court.

Had the defendant objected to the master's report as being no part of a valid record, it would have been incumbent on the plaintiff to have shown that it was taken in a depending cause, regularly before the court, and within its jurisdiction. 2 Phillips' Ev. 219.* This would have resulted in the view which the court below took of the proceedings in the divorce case, in the exclusion of the master's report as a record, although it would have been admissible as a voluntary affidavit of James W. Clayton, containing an admission or statement respecting his marriage with the plaintiff. 1 Greenl. Ev., § 516; 2 Phillips' Ev. 211.* But no objection was urged challenging its character as a record; on the other hand, the entire defense proceeded upon the theory that the proceedings in the divorce suit were valid. The first objection to the report was "because it shows it is the testimony of James W. Clayton, and his statements cannot bind these defendants." This objection was properly overruled, as all the parties claimed through James W. Clayton, and stood in the relation of privies to him. Nor was the second objection tenable.

Its character as a record being admitted, there was no

rule that required the plaintiff to introduce the entire record in order to avail himself of a part of it.

There was no error, therefore, in admitting the master's report over the objections urged against it, and we are not called upon to consider objections not urged in the court below.

The foregojng are the principal assignments urged by the appellants, and all that we deem it necessary to consider.

*Judgment affirmed.*