# September Term, 1908.

[No. 5846.]

GRAND LODGE OF THE ANCIENT ORDER OF UNITED
WORKMEN V. TAYLOR.

1. **Jury—Challenge for Cause—Bias**—Where, in an action upon a life insurance policy in which the infant children of the insured are beneficiaries, one called as a juror testifies on the voir dire that he was an old friend of deceased, that he might unconsciously favor his children, and probably would, a challenge for cause must be sustained.—P. 374.

2. **Pleadings—Complaint**—Complaint on an insurance policy must not only allege the contract, but the happening of the contingency whereby the insurer becomes liable for the indemnity to which the plaintiff is entitled.—P. 375.

3. **What Must Be Pleaded Especially**—Defendant, relying on non-performance by plaintiff of some condition precedent to liability, must plead it.—P. 375.

4. **Evidence—Burden of Proof**—Insurance company alleging forfeiture of the policy, has the burden of proof.—P. 375.

5. **Insurance—Forfeiture**—A policy issued by a benevolent association provided that the failure to pay certain assessments before, the last day of the month in which the assessment was levied, should work a forfeiture of all the rights of the member. The failure of the member to comply with this condition is not waived by a tender of the assessment after his death.—P. 378.

And acceptance of the payment by the proper officer, merely provisionally, and under an agreement to present the matter to the lodge, does not waive the conditions of the policy nor cure the default.—P. 377.

*Appeal from Pitkin District Court.*
*Hon. Theron Stevens, Judge.*

Mr. S. S. ABBOTT, for appellant.

Mr. THOS. A. RUCKER and Mr. HENRY C. ROGERS, for appellee.

(373)

Mr. Justice Campbell delivered the opinion of the court:

Action by the guardian of the minor children of William H. McDonald, deceased, beneficiaries under a policy of insurance issued upon his life by the Grand Lodge of the Ancient Order of United Workmen. The special affirmative defense of the answer is that an assessment by the company upon the insured for the month of February, 1904, was not paid on or before the last day of that month, which the by-laws of the order required, and by reason of such nonpayment, he became, under its rules and regulations, suspended from the order, and all his rights under the policy were forfeited and lost, and he was never in his lifetime thereafter reinstated, and could not be after his death. There was a judgment for plaintiff, and defendant appeals.

1. It is first urged that the court erroneously overruled defendant's challenge for cause to the juror Dietz. While answering generally that he could sit as an impartial juror and decide according to the law and the evidence and was not affected by bias or prejudice, Dietz's examination clearly disclosed that he had a bias in favor of the children of the insured, the beneficiaries under this policy, and admitted that he might try to favor them. He was an old friend of McDonald's, and said there was an impression in his mind that he would not do anything that would hurt McDonald's children, and while he would not consciously favor them, he might unconsciously do so, and it was probable that he would; and that plaintiff and defendant would not enter upon the trial of the case evenly balanced. We think the court should have excused this juror from the panel, as his examination, taken in its entirety, shows bias for plaintiff, and that, as to him, defendant would

be required to prove its affirmative defense by a greater preponderance of the evidence than the law requires.   The defendant is in a position to urge this point, because it had exhausted all its peremptory challenges before the panel was filled, and one of the jurors peremptorily challenged was Dietz.

2.   Defendant complains that the court wrongfully refused some of the instructions tendered by it and of its own motion gave other instructions which were erroneous.   We shall not specifically pass on the errors assigned to these rulings further than to indicate in the discussion of the next assignment our views upon certain questions of law that were raised.

3.   The judgment cannot be upheld under the evidence.   Under the rule in this jurisdiction, in an action of this kind, when the insurance policy is delivered and becomes operative, all that is necessary primarily to allege in the complaint is the contract of insurance, the happening of the contingency whereby the insurer became liable to pay by reason of the contract, and the amount of the indemnity to which he is entitled.—*National Insurance Company v. Sprague,* 40 Colo. 344; *Penn Mutual Life Insurance Company v. Ornauer,* 39 Colo. 498, 90 Pac. 846.

If the defendant relies on noncompliance by plaintiff with some necessary or essential condition upon which its liability depends, it must specially plead the same, and the burden is on it to prove it. Defendant affirmatively pleaded nonpayment in this case, and thereby assumed the burden of proof.   This burden, we think, was successfully discharged, and the case ought not to have been submitted to the jury. As we do not wish to prejudge the rights of the parties in case of another trial, our observations upon this branch of the case are limited to the record now before us.   This contract of insurance provided, among other things, that the insured should comply

with all the laws, regulations, and requirements of the order, and compliance therewith was made an express condition upon which he was entitled to participate in its beneficiary fund and have and enjoy the benefits and privileges of the order. No officer or member of the supreme, or of the subordinate or inferior lodge, had the power to waive performance of any duty imposed upon or required by any lodge officer or member by any of the laws, rules, or regulations of the supreme lodge. A beneficiary fund was provided out of which payment was made of a sum not exceeding two thousand dollars to the beneficiaries of the insured who, at the time of his death, was in good standing. The failure to pay assessments for the beneficiary or guaranty fund, or lodge dues, within the time specified for payment, in every case constitutes suspension; but any member suspended may be reinstated at any time within the period of three months from the date of such suspension upon the payment of all unpaid assessments; and it was expressly provided that any member who failed or neglected to pay assessments made upon him for the beneficiary or guaranty fund to the financier of the lodge of which he was a member on or before the last day of the month in which the assessment was levied, shall forfeit all his rights as such member and shall stand suspended from the rights, benefits, and privileges of the order from and after that date. A standing rule required each member to pay to the financier of his subordinate lodge one assessment for the beneficiary fund on or before the last day of each calendar month, without notice, and, as said, for the failure to make payment before the last day of such calendar month, the insured forfeited and lost all his rights.

The uncontradicted evidence is that McDonald, the insured, died not later than the 13th day of

March, 1904. The assessment upon him and other members for the next preceding month of February had been levied and the assessment was not paid before the last day of that month or at all, and was not tendered by anyone to the financier until the 14th of the following month of March, the day after the death of the insured.

Mugfur was then the financier of the lodge. Its members, it appears, were mostly working men, and to accommodate them Mugfur permitted payments of monthly assessments to be made to his wife at their home, and authorized her to sign receipts for such payments in his name. The evidence is clear that no one but Mugfur and his wife had any authority to receive payment of assessments. Both of them swore positively that neither McDonald nor anyone for him paid, or offered to pay, McDonald's February assessment during that month. The day after McDonald's death, one of his children tendered to Mugfur the February assessment, but was informed at the time by him that it was too late and that he could not receipt for the same. Being further importuned to accept this money and tender it to the subordinate lodge to see if it would not be accepted by the order, Mugfur took the money from the insured's daughter and told her that, while he could not receipt for the same or accept it as the financier, he would present the matter to the lodge to see if any relief could be given. Subsequently he presented his request to the lodge and was informed that under the rules and regulations the money could not be accepted, and was ordered to return the money. Mugfur tendered the money back to the insured's daughter, and she refused to accept it. The only testimony that might be claimed as tending to contradict this testimony was the statement of Mugfur himself on cross-examination that some of the members of the order, but not

McDonald, had left money for their assessments with a local merchant, which afterwards was tendered to the financier and receipts therefor given; and that assessments, but not McDonald's, had sometimes been received after the last day of the particular month for which they were levied; but in no case is there any evidence that money had been tendered by, or accepted from, beneficiaries of an insured after his death.

We think this evidence shows that McDonald's assessment for the month of February was not paid during that month, and that payment of the same was not tendered until after his death. This, under the plain and unambiguous language of the rules and regulations of the order, operated as a suspension, and thereby the insured forfeited all right to participate in the beneficiary fund.

There was other uncontradicted evidence before the court that McDonald's suspension was formally entered upon the minutes of the lodge, and before his death notice thereof given to him by the financier, with the request that if he had concluded to withdraw, to notify the financier, so that the local lodge would not be obliged to remit to the grand lodge his per capita tax; to which no answer was received. McDonald was not reinstated. The tender of his assessment by his daughter after his death, does not operate to restore him to the privileges of the order.

The authorities seem to be in accord as to the law governing such a state of facts as this record discloses.

The judgment must be reversed and the cause remanded.                    *Reversed and remanded.*

Mr. Justice GABBERT and Mr. Justice BAILEY concur.