Bell, J.
This suit was brought in the district court of Pitkin ■County, Colorado, by Uriah Taylor, as guardian of May, Helen, William and Bryan McDonald, minors, heirs of *107 William Ii. McDonald, deceased, against the Grand Lodge of the Ancient Order of United Workmen .of the State of Colorado, on a certificate of insurance to recover the sum of $2,050.00, with interest at the rate of 8 per cent per annum.
The controlling issue in the case is whether the deceased, William H. McDonald,' or anyone for him, paid the assessment due in February, 1904, before the death of the insured, which took place about March 13th, 1904.
William H. McDonald, deceased, held his certificate on condition that he should “pay assessments made upon him for the beneficiary or guaranty fund or lodge dues to the financier of the lodge of which he was a member on or before the last day of the month, in which said assessment or lodge dues are levied (or) shall forfeit all his rights as such member, shall stand suspended .from all rights, benefits and privileges of the order from and after that date, and shall not be reinstated except as hereinafter provided. ’ ’
The power is taken away by the constitution of the order from any grand lodge officer, subordinate lodge or any other officer to waive any provision whatever of the constitution of the lodge.
Under the constitution and general laws of the order any suspended member who has forfeited all of his rights by reason of the non-payment of his assessments for the beneficiary or guaranty funds or lodge dues may be reinstated, if he be living, at any time within three months from the date of such suspension by paying all assessments and lodge dues that have been levied during the time of the suspension, including the pending assessments and dues at the time of the suspension, and upon furnishing a certificate of good health at the time the assessments are paid in the manner and upon the blank prescribed by the order, by a majority vote of the lodge.
It is charged and proven that there was an assess *108 ment called for on the first day of February, 1904, as provided for in the laws of the order; and it is charged by the appellant that the said William IT. McDonald did not pay the same on or before the last day of the said calendar month, to-wit, the last day of February, 1904, and by reason of the non-payment thereof the said McDonald became suspended from the order, and lost and forfeited all his rights, and that the said beneficiary certificate became suspended; and that the said McDonald was never in his lifetime reinstated in said order, and could not, under the laws of said order, be reinstated after his death.
The appellee avers in his replication that the appellant is estopped to plead the constitution and laws of the order or of the state because, he alleges, that the order has, by custom and conduct in dealing with the deceased and other members of the order, waived and condoned the payment of all dues, assessments and requirements of the technical regulations of the order, and pleads payment on the 26th day of February, 1904, of the $3.50 assessment then due.
This case was before the supreme court on substantially the same pleadings and the same evidence as are before' us in this hearing, and was decided at the September Term, 1908, and is reported in 44 Colo., 373-378, 99 Pac., 570.
The opinions of the supreme court on a former appeal of the case, become thereafter the law of the case as to all questions passed upon by it.—The First National Bank of Ouray v. Shark, City Treasurer, 53 Colo., 446, 128 Pac., 56-60.
When this case was before the supreme court it held that:
“No officer or member of the supreme, or of the subordinate or inferior lodge, had the power to waive performance of any duty imposed upon or required by *109 any lodge officer or member by any of the laws, rules, or regulations of the supreme lodge.”—Grand Lodge of the Ancient Order of United Workmen v. Taylor, 44 Colo., 376, 99 Pac., 572.
The supreme court further held that:
“The uncontradicted evidence is that McDonald, the insured, died not later than the 13th day of March, 1904. The assessment upon him and other members for the next preceding month of February had been levied, and the assessment was not paid before the last day of that month or at all, and was not tendered by anyone to the financier until the 14th of the following month of March, the day after the death of the insured.
“Mugfur was then the financier of the lodge. Its members, it appears, were mostly workingmen, and to accommodate them Mugfur permitted payments of monthly assessments to be made to his wife at their home, and authorized her to sign receipts for such payments in his name. The evidence is clear,that no one but Mugfur and his wife had any authority to receive payment of assessments. Both of them swore positively that neither McDonald nor anyone for him, paid, or offered to pay, McDonald’s February assessment during that month. The day after McDonald’s death,.one of his children tendered to Mugfur the February assessment, but was informed at the time by him that it was too late and that he could not receipt for the same. Being further importuned to accept this money and tender it to the subordinate lodge to see if it would be accepted by the order, Mugfur took the money from the insured’s daughter and told her that, while he could not receipt for the same, he would present the matter to the lodge to see if any relief' could be given. Subsequently he presented his request to the lodge and was informed that under the rules and regulations the money could not be accepted, and was ordered to return the money. Mugfur tendered *110 the money back to the insured’s daughter, and she refused to accept it. The only testimony that might be claimed as tending to contradict this testimony was the statement of Mugfur himself on cross-examination that some of the members of the order, but not McDonald, had left money for their assessments with a local merchant, which afterwards was tendered to the financier and receipts therefor given; and that assessments, but not McDonald’s, had sometimes been received after the last day of the particular month for which they were levied; but in no case is there any evidence that money had been tendered by, or accepted from, beneficiaries of an insured after his death.
“We think this evidence shows that McDonald’s assessment for the month of February was not paid during that month, and that payment of the same was not tendered until after his death. This, under the-plain and unambiguous language of the rules and regulations of the order, operated as a suspension, and thereby the insured forfeited all rights to participate in the beneficiary fund.” — 44 Colo., 371, 378, 99 Pac., 572, supra.
This effectually disposes of the claim of waiver or estoppel of the subordinate lodge or the supreme lodge as far as the evidence was concerned when before the supreme court.
We think that there is no material change in the weight of the evidence now from what it was when before the supreme court.
On the first trial the plaintiff tried the case upon the theory that the money to pay the February assessment was left with May McDonald in due time and that she, for some cause, failed to pay the same; and on the further assumption that the financier of the lodge had been accustomed to receive the money after the suspension and therefore it was estopped from claiming a forfeiture.
*111 The supreme court, when this case was before it, conclusively settled that question. After discussing the contention of the appellee that the financier had at some times received assessments after the last day of the particular month for which they were levied, the court forcibly said:
“But in no case is there any evidence that the money had been tendered by or accepted from beneficiaries of an insured after his death.
“We think this evidence shows that McDonald’s assessment for the month of February was not paid during that month and that payment of the same was not tendered until after his death,' and thereby the insured lost all right to participate in the beneficiary fund.”
We have closely compared the evidence considered by the supreme court when the case was before it and the evidence presented to us here, and there is no substantial difference, except that the trial court in the second trial excluded, wrongfully we think, the admissions of May McDonald, one of the beneficiaries, in her testimony in the original trial to the effect that her father gave her the money to pay the February assessment and told her to pay it if he did not, and that she kept the money until after the death of her father and then tendered it to the financier of the lodge; that she knew that her father was dead at the time, and knew that he had not paid the assessment.'
On the first trial in the district court the chief purpose seemed to be to establish a custom to take money after the suspension for failure to pay.
The supreme court held, when the case was before it, that this did not relieve them from a failure to pay before the insured died.
On the second trial the pressure seems to have been directed toward an .effort to prove an actual payment of the assessment within the time required by the regula *112 tions of tlie order; but we think they utterly failed to improve on the case as presented in the supreme court.
The appellee did not call May McDonald as a witness. The appellant called the stenographer who took her testimony when on the stand in the former trial wherein she admitted that her father gave her the money to pay the assessment on or about the. 26th day of February, 1904, and directed her to pay if he did not, and had him thoroughly identify her testimony and then offered it in evidence as admissions against her interests as a beneficiary under the certificate. Counsel for appellee objected because she was in court and could testify. The judge sustained the objection, particularly calling attention to Section 7284 of the Revised Statutes of 1908, permitting one party to an action to call another party opposing him to the stand for cross-examination without the party calling for such examination being concluded thereby and allows the party, so calling for such examination, to rebut it by counter testimony.
We think this clearly injurious error. The statute cited does not take from either party any legal right they had before to use the admissions of parties in interest made in opposition to principles for which they were then contending.
Jones on Evidence, 2nd Ed., Section 236, states the rule in this language:
“If the testimony is of such a character as to constitute an admission of the parties, it is not necessary to lay a foundation for its reception by first asking the party if he has made such statements, nor is it necessary that the statement should at the time of making it appear to be against the interest of the party. The statement is admissible if at the time of the trial it is inconsistent with the contention of the party who made it.”
Mr. Jones further states:
“In a suit by or against several persons, who are *113 proved to have- a joint interest in the decision a declaration made by one of them while engaged in the joint business concern — a material fact within his knowledge is evidence against him and against all who are parties with him in the suit.” — Jones on Evidence, supra, Section 248.
In speaking to the same subject our supreme' court says:
“The fourth error assigned is the court erred in allowing the defendant to introduce in evidence the testimony of the appellant given on the trial of this action in the county court. The objection made to the introduction of this evidence and to the rea'ding of the same to the jury, was that the appellant was present in court and could have been made a witness. This objection is not well taken. The sworn testimony of a party to an action may be used against such party as an admission.” —Buddee v. Spangler, 12 Colo., 216-223, 20 Pac., 763; Clayton v. Clayton, 4 Colo., 410-417; Holman v. Land, etc., 20 Colo., 7-12, 36 Pac., 797.
We find the overwhelming weight of the evidence in both records sent to the supreme court against the allegation that the assessment, due in February, 1904, was paid; and we think in each instance that the trial judge should have directed judgment in favor of the defendant.
These fraternal organizations are not for profit, but, as the certificates, constitution and by-laws indicate, a body of neighbors, usually of small means, who affiliate for mutual benefits, and each member is subject to the same rules and regulations. It is essential that they require such discipline as will enable the circles or lodges to promptly collect their dues so as to meet their obligations ; otherwise the very existence of the body would be destroyed.
There is no provision or authority, either by the lodges or the state, for the collection of dues by process *114 of law. The organization makes its own laws and regulations. The relations of the members to the lodge are such that every member knows these regulations and is aware of the consequences if he dies while suspended. And, as much as we may regret to see these beneficiaries lose all interest in the benefit fund, we are compelled, under our duties, to enforce all rules and regulations, like those involved in this case, on the demand of the lodges against their own members.
There are many more important questions raised in this record, hut we feel that we should devote no more time to the same, and the judgment is hereby reversed for the reasons herein, stated.