ANNIE L. NORMAN, a widow, v. MERCHANTS & BANKERS MUTUAL BENEFIT CORPORATION.

168 So. 647.
En Banc.
Opinion Filed June 1, 1936.
Rehearing Denied June 18, 1936.

438

*Fuller Warren* and *John W. Muskoff,* for Petitioner; *Dean Boggs,* for Respondent.

Ellis, P. J.—We decided to consider the merits of this case on the application for certiorari.

William F. Norman was the holder of two certificates of membership in the Merchants & Bankers Mutual Benefit Corporation. The Corporation is a mutual benefit organization. Its purpose and object are to relieve and aid needy members and their beneficiaries through the collection of contributions from the membership at large. It issues certificates of membership upon the application of persons desiring to become members. A membership certificate is issued upon the representations of the applicant that the answers he makes to certain questions set out in the application are true. If such answers are untrue a clause of the certificates provides that it "is null and void."

In case of injury to a member or in case of his death the benefit is paid to him or his beneficiary from a fund called the Reserve Fund. Payments are limited to a thousand dollars on each certificate. If such amount is not in the Fund when the loss occurs each member is subject to a "contribution" of one dollar and all benefits mentioned in the certificate "are conditioned upon same being collected from the members at the rate of $1.00 each, and in no case shall the liability of this Corporation exceed a sum equal to $1.00 for each member whose said contribution is re-

ceived within thirty (30) days from the date of assessment notice."

Upon the issuing of a certificate a charter fee of five dollars is required to be paid by the member. The member may be called upon to contribute to the expense of the Corporation the sum of six dollars per annum payable in quarterly payments of one dollar and fifty cents each in January, April, July and October. All payments by members are considered as voluntary gifts or donations for the purpose of aiding members or their beneficiaries.

Norman died in January, 1933, according to the first and second counts of a declaration in the case to enforce payment of the certificates by the beneficiary of the member, who is his widow, and in January, 1932, according to the third count of the declaration.

Mrs. Annie L. Norman, widow of the certificate holder, brought her action in the Civil Court of Record for Duval County upon the two certificates alleging that her husband had died and the Company had refused to pay the obligation upon the certificates except the sum of one hundred and fifty dollars which it paid on the "_____ day of _____, A. D. 1932." The declaration alleged that the two certificates were issued on February 21, 1931, and on March 30th, of the same year. The two certificates were attached to the declaration and made a part of it.

Motions to strike and for compulsory amendment and a demurrer seem to have been waived as no disposition seems to have been made of them and the defendant interposed pleas. 49 C. J. 447; 21 R. C. L. 622.

The pleas interposed to the first two counts were in substance identical. They averred that Norman untruthfully represented the condition of his health to be good when he applied for the certificates; that the certificates lapsed in

July, 1932, for the non-payment of assessments and was reinstated upon his representation that he was in good health when in truth he was not; that he accepted the by-laws and agreed to pay all contributions and assessments to be made in the future. The pleas averred specifically the disease from which he suffered when he applied for the certificate and when they were reinstated. The one plea to both counts averred that Norman failed to pay an assessment of $1.50 which became due and payable January 1, 1933, and has not paid the same.

Mrs. Norman filed a replication to the pleas alleging that the defendant in full knowledge of the facts averred in the pleas "offered to compromise the above loss"; that the defendant with full knowledge of the facts "offered to pay and did make a payment to the plaintiff by reason of said contract of insurance." The third replication was withdrawn.

A demurrer to the replication was sustained. The plaintiff not applying for leave to amend, judgment was entered "on demurrer in favor of the defendant" and "against the plaintiff."

The demurrer attacked the replication on the ground that no facts were alleged which caused a revival of the contract of insurance, nor was any fact averred which operated as a waiver of the defense or which operated as an estoppel, and only conclusions of law were alleged.

Mrs. Norman appealed to the Circuit Court for Duval County. That court affirmed the judgment of the Civil Court of Record, so the application for certiorari from this Court was made.

The question presented is whether the replication should have alleged that the corporation recognized its liability upon the certificates and if it was unnecessary to do so did

the Circuit Court proceed in accordance with the essential requirements of the law in affirming the judgment.

A demurrer challenges the legal sufficiency of the pleading to which it is directed and opens the record to where it reaches essential defects in the declaration. See Martin v. Dade Muck Land Co., 95 Fla. 530, 116 South. Rep. 449; Heathcote v. Fairbanks, Morse & Co., 60 Fla. 97, 53 South. Rep. 590; Johnson v. F. E. C. Ry. Co., 66 Fla. 415, 63 South. Rep. 713; 50 L. R. A. (N. S.) 561, Ann. Cas. 1916 C. 1210; Cole Motor Car Co. v. O'Kelly, 101 Fla. 198, 133 South. Rep. 874; Stokes v. Barrs, 18 Fla. 656; Shelton v. Eisemann, 75 Fla. 644, 79 South. Rep. 75; Weida v. Bacon, 102 Fla. 628, 138 South. Rep. 32.

We find no error in the declaration. There was no defense of lack of money in the Reserve Fund. If, however, the certificates or their revivals were procured by fraud on the part of the member they were declared to be void by the terms of the by-law which is for the Company's benefit.

In the case of American Automobile Ins. Ass. v. Folsom, 119 Fla. 295, 161 South. Rep. 434, this Court held that a replication which alleged an offer by the Company to settle with the plaintiff and which waived the provision of the policy set up in the plea and recognized the policy to be in force and effect was good.

The defendant is a mutual benefit association formed not for profit but for the mutual protection, relief or benefit of its members or their designated beneficiaries. From the by-laws appearing in the certificates of membership the object of the association is benevolence. Its benefits are confined to its members but by its contracts with its members in consideration of the payment of a charter fee and assessment for expenses and an assessment for the Reserve Fund it indemnifies its members against loss from injuries or their

beneficiaries in case of the members' death. The contract is essentially a contract of insurance. 7 C. J. 1053.

Although it may not be said that the certificates of membership issued by the Company to its members is "life" insurance in the sense of that term as applied to regular "old line" companies, the defendant, however, is an incorporated company. Its members consist of those to whom certificates like those sued upon in this case are issued. It is officered by a Board of Directors, a president, vice-president, secretary, treasurer, and comptroller. The duties of the officers are prescribed by the by-laws. How they are elected and by whom, however, is not stated, although it is provided that the by-laws may be amended by the Board of Directors at any annual or called meetings.

Generally there is no difference between mutual and stock insurance companies in respect to the power of officers or agents to waive provisions in their policies. See Swedish-American Ins. Co. v. Knutson, 67 Kan. 71, 72 Pac. Rep. 526, 100 A. S. R. 382.

It is true that the policies or certificates contain the provisions that if it is found that the answers to certain questions propounded when the application for membership is made are untrue that the certificate is "null and void." In one of the certificates it is provided that such untrue answers "shall render the certificate void" and each provides for the payment annually of six dollars in quarterly payments for "Expense Assessments." It is also true that each certificate provides that all payments made now or hereafter by any member shall be considered "voluntary gifts or donations for the purpose of aiding Members or their Beneficiaries, and to pay the expense of said Corporation." Those provisions are inserted for the benefit of the insurer

insofar as they relate to the invalidity of the policy or certificate.

The provision as to payments being treated as voluntary contributions by the member fix the character of the Corporation as purely a mutual Benefit Association. Death assessments of one dollar each, however, are required to be paid within a certain time after notice on pain of the delinquent member's suspension from all rights of the certificate. No such provision, however, attaches to failure of the member to pay the six dollars per annum in quarterly payments for corporation expense.

Now the failure to pay the first quarterly assessment for Corporation expense may have suspended the member from the benefits of his certificate and the benefits to his beneficiary after his death, but that provision in the certificate is also for the Company's benefit. The company remaining passive, if it did remain so, when it discovered the alleged untruthful answers of the applicant for membership when the certificates were reinstated and later when the member failed or refused to pay the first quarterly assessment for "Corporation expense," the assured was deprived of an opportunity to protect himself if the certificates were to be declared void and of no effect. The quoted provisions of the certificate and by-laws should be regarded as meaning that the insurer had at its exclusive option the right to treat the policy as a nullity. It was put to its election to so declare when the information of the fraud as alleged and failure to pay came to it. Not doing so, and thus notifying the member of the status of his membership certificate, the Company would be estopped from claiming a forfeiture when it becomes to its advantage to do so after loss has occurred. Such are the views as expressed by Mr. Justice BURCH, speaking for the court in the Knutson case, *supra*.

The general rule is that when a policy has been duly issued with knowledge of facts which would render it void in its inception if its provisions were insisted upon the Company will be held to have waived such provisions or be estopped from asserting them. See 32 C. J. 1329, 1343.

It follows that if initial false representations in procuring a policy may be waived that they may also be waived on reinstatement of the policy. So as a corollary they may be waived if after discovery of such false representations or knowledge of failure to pay dues or assessments the Company fails to avail itself of the right to declare the policy or certificate void. In such circumstances it was the Company's duty to declare the certificate void or forfeited to the end that the insured may protect himself if the policy were to be forfeited.

There is authority for the proposition that where the laws of the mutual society in regard to the forfeiture of the right to benefits are couched in terms which render them self-executing, affirmative action by the society to declare the certificate void or forfeited is not necessary. We interpret the by-laws as the same appear in the certificate to require affirmative action by the corporation to declare a certificate to be forfeited. 45 C. J. 118; Kennedy v. The Grand Fraternity, 36 Mont. 325, 92 Pac. Rep. 971, 25 L. R. A. (N. S.) 78.

The by-laws of the Company provide that the Board of Directors of the Corporation shall have the right and power to expel any member of the Corporation for fraud or misrepresentation, and this contemplates suspension of a member for non-payment of any assessment. See Articles X and XI, by-laws. Notice of such action by the Company, therefore, is a condition precedent to forfeiture. There is no provision in the policy or certificate which unqualifiedly

operates to suspend a member or forfeit his rights without notice. 45 C. J. 119.

Many authorities are cited in the text in support of the rule which seems to be the one more consistent with reason and fairness in consideration of the further rule that the by-laws and terms of membership as set out in the certificate are made for the benefit of the company and should be construed liberally in favor of the assured. Such is the rule adopted in this State. See Palatine Ins. Co. v. Whitfield, 73 Fla. 716, 74 South. Rep. 869; Eagle Fire Co. v. Lewallen & Co., 56 Fla. 246, 47 South. Rep. 947; Queen Ins. Co. v. Patterson Drug Co., 73 Fla. 665, 74 South. Rep. 807, L. R. A. 1917 D 1091.

There is also a rule of interpretation approved in this State which requires that the language used is to be given its popular and usual significance unless the context requires a different construction. See Aetna Casualty and Surety Co. v. Cartmel, 87 Fla. 495, 100 South. Rep. 802, 35 A. L. R. 1013.

It must be liberally construed in favor of the insured so as not to defeat without a plain necessity his claim to indemnity which in obtaining the insurance it was his object to secure. See National Surety Co. v. Williams, 74 Fla. 446, 77 South. Rep. 212; Aetna Casualty and Surety Co. v. Cartmel, *supra;* Queen Ins. Co. v. Patterson Drug Co., *supra.*

Ambiguous provisions, or when two interpretations equally fair may be given, that which gives the greater indemnity will prevail or that which is most favorable to the insured. See Travelers Ins. Co. v. Peake, 82 Fla. 128, 89 South. Rep. 418; Price v. Prudential Ins. Co., 98 Fla. 1044, 124 South. Rep. 817; L'Engle v. Scottish U. & N. Fire Ins. Co., 48

Fla. 82, 37 South. Rep. 462, 111 Am. St. Rep. 70, 6 L. R. ·A. 581, 5 Ann. Cas. 748.

The above rules being applicable to Mutual Benefit Societies it becomes necessary to consider the pleas interposed to the declaration which undertake to set up a defense to the plaintiff's claim. If the pleas are defective, the demurrer to the replication should as we have shown been visited upon them, because a bad replication is a good reply to a bad plea.

The pleas in this case were defective because it is nowhere averred that the member had been suspended for non-payment of dues or that the Board of Directors had expelled the member for fraud or misrepresentation. The replication alleges that in knowledge of all the facts averred in the plea the Company nevertheless offered to pay and did pay a part of its obligation. If the member had been suspended no obligation whatsoever would have rested upon the Company to pay any sum, and it cannot in the circumstances be said that the offer to pay and the actual payment of part of the obligation was merely an offer to buy its peace.

We conclude, therefore, that the pleas interposed no defense to the declaration; that the replication was a good reply to the pleas, and that on demurrer the pleas should have been held to be bad and the judgment should have been for the plaintiff instead of for the defendant. To have pursued a different course was to disregard the essential requirements of the law.

The writ of certiorari is therefore issued and the judgment of the Circuit Court quashed and the judgment of the Civil Court of Record reversed.

WHITFIELD, C. J., and TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.