MERCHANTS AND BANKERS GUARANTY COMPANY v. MOLLIE DOWNS, a Widow.

175 So. 704.
Opinion Filed July 2, 1937.

768

*Dean Boggs* and *J. L. Blackwell,* for Plaintiff in Error;
*Mack H. Padgett* and *A. C. Johnson,* for Defendant in Error.

BROWN, J.—Plaintiff in error, in its statement of the questions involved as set forth in its brief filed herein, presents as the controlling question in this case the following:

"Where a benefit certificate in a mutual benefit insurance company has been cancelled by an agreement in writing between the certificate holder and the Company and a new policy issued to him by the successor reincorporated company and he subsequently dies and suit is brought on the new policy, is the old cancelled certificate material at the trial of the case to vary the terms of the policy sued upon?"

Taking this abstract question at its face value, the answer would obviously be, no.

On December 3, 1934, the plaintiff, Mrs. Mollie Downs, defendant in error here, filed her declaration in the Circuit Court for Suwannee County, against Merchants and Bankers Guaranty Company, a corporation, in the usual form of

a declaration on an insurance policy, alleging among other things that on the 7th day of February, 1934, the defendant issued to Charlie Downs, her husband, a policy or contract of insurance denominated as a membership certificate, upon the payment of proper premium as required by the defendant, whereby the defendant promised to pay the plaintiff, as the widow of said Charlie Downs, a sum not to exceed the sum of one thousand dollars, subject to the conditions named in the by-laws of the said corporation, which said contract of insurance was attached to the declaration and made a part of the same.

The declaration further alleged that on August 18, 1933, the Merchants and Bankers Mutual Benefit Corporation had filed in the office of the Secretary of State a certificate of reincorporation as provided by Chapter 15885, Laws of Florida of 1933, and on August 30, 1933, upon due proceedings taken, it changed its corporate name to Merchants and Bankers Guaranty Company, by which it is functioning and doing business and authorized to do business under the law of this State; that since the filing of the reincorporation certificate and the change of name, the said defendant has continued to collect and receive payment of dues, premiums and assessments, and to issue receipts therefor and has therefore assumed full responsibility and liability to its members holding membership certificates in Merchants and Bankers Mutual Benefit Corporation.

It is further alleged that on April 21, 1934, said Charley Downs died, being at that time the holder of the membership certificate of the defendant herein, and all dues, fees and requirements of the said defendant company had been paid and the rules and regulations of the Company fully complied with; that plaintiff was the wife of said Charlie Downs and the beneficiary in said membership certificate, and had made due proof of death of her said husband in compliance with

the regulations of the defendant. That, although plaintiff had performed all things precedent and necessary, to entitle her to the payment of said certificate, the defendant, had failed and refused to pay the amount obligated therein, and that plaintiff had been compelled to employ counsel. Wherefore plaintiff sues and claims the full face value of said policy or membership ticket and reasonable attorney's fees to be adjudged by the court.

The defendant filed two pleas to this declaration. The first plea was that the policy sued on, the original of which was attached to the declaration, was issued and premium effective on February 7, 1934, as alleged in the declaration, and that the death of Charlie Downs occurred within one year thereafter as a result of, or caused by, or complicated by, a form of heart trouble; that Section 10 (b) of said policy provides that if the member shall within one year from the effective date of the policy die as result of, or caused by or complicated by any form of heart trouble, then the Company shall be liable for the payment of only 20 per cent. of the amount otherwise due thereunder; that under this provision the defendant's liability upon the death of said Charlie Downs was thereupon reduced to $200.00, he having died on April 21, 1934; and that under Section 10 (c) it was provided that in the event of a claim arising under said policy due to death or injury to the member within 90 days from the effective date of the policy, benefits for which the Company is liable shall be the payment of 20 per cent. of the benefit otherwise payable hereunder, and that under said Section 10 (c) the defendant's liability was reduced 20 per cent. of $200.00, that is, $40.00. That on February 7, 1934, the date of the issuance of the policy, said Charlie Downs was over the age of sixty-five years, and that under the provisions of Section 10 (g) of the policy the amount was thereby further reduced to 50 per cent. of

the benefit otherwise payable or to the sum of $20.00. That therefore the amount payable to the plaintiff by the defendant is $20.00; that defendant has never denied liability on the policy, but always was and still is willing to pay the said $20.00, which it had tendered to pay before suit brought and plaintiff had refused to accept it; that defendant now brings said $20.00 into court ready to be paid to the plaintiff.

The second plea filed to the declaration merely claimed the benefit of said Section 10 (b) and Section 10 (c), thereby claiming that defendant's liability was reduced to $40.00, but omitting to claim the benefit of Section 10 (g) as was done in the first plea. Later on the defendant filed an additional plea which claimed the benefit of the reduction provided for by Section 10 (c) only, that being the section which provided for liability of 20 per cent. where death occurred within ninety days from the date of the policy, thereby reducing defendant's liability to $200.00. The case came on for trial on May 18, and by agreement of the parties was tried before the Judge without a jury.

The plaintiff testifying in her own behalf identified the policy No. 5034 SL issued by Merchants and Bankers Guaranty Company and dated February 7, 1934, as the policy sued upon and upon which she based her claim, being the policy described in the declaration, and the same was admitted in evidence. She testified that her husband died on April 2nd, 1934; that she had submitted the claim on the policy to the company; that at the time of her husband's death all dues and premiums had been paid up in full, and that she had never been paid anything on the policy; that the Company had offered or tendered her a draft for $20.00, but she had refused it. Testimony as to attorney's fees was admitted and plaintiff rested. The defendant recalled the plaintiff to the stand as a defendant's witness and she testified that her husband was sixty-eight years old at the

time of his death. Then on cross-examination by her own attorney, Mrs. Downs testified, over the objection of the defendant, concerning an old certificate which her husband had carried with the Merchants and Bankers Corporation before it reincorporated and became Merchants and Bankers Guaranty Company. The defendant objected on the ground that there was no allegation in the declaration or the pleas referring to any other policy except the one being sued on. The objection was overruled and the old certificate issued to Charlie Downs by Merchants and Bankers Mutual Benefit Corporation, being No. 6977, and dated December 8, 1930, and naming the plaintiff as beneficiary, was admitted in evidence for the plaintiff over defendant's objection. The old certificate thus admitted in evidence was not by its terms subject to the deductions provided for in the new certificate and the benefit of which were claimed in the pleas of the defendant above referred to.

On further examination by defendant, plaintiff identified an instrument which she testified she signed in her husband's presence for him because he could not write. She wrote his name for him in his presence. This instrument was received in evidence on behalf of the defendant and reads as follows:

"Merchants and Bankers Guaranty Company,

"501 Hildebrandt Building,

"Jacksonville, Florida.

"Gentlemen:

"My new certificate No. 5034-S. L., which has been approved by the insurance department of the State of Florida, is received and accepted, and I understand and agree my old certificate No. 6977 is hereby cancelled.

"MR. CHARLIE DOWNS (in pencil).

"Signature of policyholder.

"Date February 13, 1934."

The defendant then called as a witness Dr. J. M. Price, who had treated the deceased during his last illness. Dr. Price was not allowed to testify as to what caused the death of the deceased, upon objection of plaintiff's counsel that the doctor's testimony was designed to prove the plea of: the defendant that death occurred within one year after the: issuance of the certificate, whereas plaintiff's contention was that the time limitation in the second policy should be calculated from the date of the original certificate of December 9, 1930; that therefore death did not occur within one year from the issuance of the certificate, and witness' testimony was therefore immaterial.

At the suggestion of the trial Judge the plaintiff amended her declaration instanter so as to allege the issuance of the old certificate, over the objection of the defendant that the record already showed that this old certificate had been cancelled by agreement between the parties. In connection with his ruling on this question, the learned trial Judge had this to say:

"The question has developed relative to the length of time elapsing between the date of Mr. Downs' death and the date of the issuance of the policy, there being a provision in the policy, that if death occurred within one year of the date of the policy, that certain subtractive settlements would be made.

"The Court desires for this case to go along according to the rule, but the Court has knowledge of the fact, that this policy was founded and based upon a policy issued in 1930, by the same Company to the same man, and it also appears that he paid all the premiums up to the time that this Company was required by law to reorganize, and acting in accordance with that requirement, the Company did reorganize, and as a result of that reorganization, they issued to this assured, a new policy, which was based on the previous

policy issued to the same assured for the same amount, on December 8, 1930.

"This substitute policy, issued as aforesaid, based upon the same original policy, was issued on February 7, 1934, around four years after the issuance of the original policy, and was intended to carry and take over and continue the insurance of the defendant on the first original policy. The issuance of this new policy, being in no wise required of or requested by the assured, but was required of the company by law, and they were compelled to reorganize. This new policy, which is nothing more in the opinion of the Court but a part and parcel of the old policy, there being a provision that if death occurred within one year from date thereof, that certain subtractive settlement would be made in lieu of the full provision fixed in the policy.

"And now, the defendant attempts to evade payment of this policy because it takes the position that Mr. Downs died not within one year of the policy issued on December 8, 1930, but within one year of the date of the policy issued on February 7, 1934, which was a mere continuance of the old policy, and the position of the Court is that the defendant should not be allowed to take advantage of the situation, for which the assured was in no wise responsible, and except payment at this time. And it now develops, because of the situation above named, the plaintiff should be allowed to amend her pleas so as to show the issuance of this original policy, and subsequent policy, because of the situation which surrounded the Company as to legal requirements, and because of that, the plaintiff is allowed to amend her declaration so as to set out and show the exact situation as regards these policies, as the Court deems that to be just and proper procedure, because it is upon the actual facts that the Court will decide this case, and not upon the theory of a technical basis."

The effect of the amendment thus made was to base this suit upon the old policy rather than the new. The original declaration, upon which the instanter amendment was made with pen and ink, has been certified up to this Court by order of the Judge of the lower court. To get the full force and effect of the change thus made in the second paragraph of the declaration, it is necessary to set out second paragraph as it appeared before and after such change was made. The original declaration was typewritten and the second paragraph thereof, before the amendment was made, reads as follows:

"Plaintiff further alleges that on to-wit: the 7th day of February, 1934, the said defendant, upon the payment of proper fee and premium as required by the said defendant, issued to her late husband, Charlie Downs, a policy or contract of insurance, denominated as a membership certificate, wherein and whereby the said defendant promised to pay this plaintiff, as the widow of the said Charlie Downs, a sum not to exceed the sum of $1,000.00 subject to the conditions named in the by-laws of the said corporation; that plaintiff attaches hereto the said contract of insurance, or membership certificates, and marks the same Exhibit 'A' and makes the same a part of this, her declaration, as fully and completely as if set out *in extenso* herein."

After this paragraph was amended by interlineation, and by the striking out of a few words near the beginning of the paragraph, it read as follows:

"Plaintiff alleges that on to-wit: the said defendant, upon the payment of proper fee and premium as required by the said defendant, issued to her late husband, Charlie Downs, a policy or contract of insurance, which policy was a prior policy issued December 8th, 1930, which said policy is made a part hereof denominated as a membership certificate, wherein and whereby the said defendant promised to pay

this plaintiff, as the widow of the said Charlie Downs, a sum not to exceed the sum of $1,000.00 subject to the conditions named in the by-laws of the said corporation; that plaintiff attaches hereto the said contract of insurance, or membership certificates and marks the same Exhibit 'A' and makes the same a part of this, her declaration, as fully and completely as if set out *in extenso* herein."

It will thus be seen that the amendment thus made to the declaration changed the declaration from one suing on a membership certificate dated February 7, 1934, to one suing upon a membership certificate issued December 8, 1930. Thus the policy or certificate originally sued upon was eliminated entirely as the basis of the suit and the declaration as thus changed made it a suit based upon the old certificate issued December 8, 1930. We apprehend that the said amendment thus no doubt hurriedly made in open court, was not, in all probability, and in legal effect, what counsel really intended to do, but we cannot indulge in any conjecture on this point and must, of course, be governed by the amendment as actually made. Thus when the old certificate was offered in evidence by plaintiff the transcript shows this: "The old certificate is offered in evidence for the purpose of showing the age of the policy, but they would be liable under the new one."

The defendant demurred to the declaration as thus amended instanter upon various grounds, among them being that the amendment raised an entirely new and different issue; that it raised an immaterial and irrelevant issue; that the record in this case shows that the old certificate had been cancelled and is now void and of no effect, that the parties had gone to trial on the plaintiff's declaration and the pleas addressed thereto, which pleas have not been attacked in any way and that the defendant had been taken by surprise by the ruling of the court; that the amendment allowed to the declaration was contrary to and not supported

by the evidence, and constitutes a making by the court of a new contract between the parties; that the declaration before the amendment stated no cause of action on said old certificate; that the parties were bound by the issues as made in the pleadings, and that the court could not lawfully allow such an amendment, introducing an entirely new and different contract, at this stage of the proceedings.

The demurrer was overruled and the defendant moved to strike the amendment upon the same grounds as were set forth in the demurrer, which motion was overruled and the defendant excepted. After making this ruling the presiding Circuit Judge, as shown by the transcript, made the following comment:

"The Court understands thoroughly that this cause is not based upon the original policy issued upon the 8th day of December, 1930, but is based upon a substitute policy issued on February 7, 1934, and the only basis upon which the Court allowed the introduction into evidence of the old policy is, because it shows that Mr. Downs was a policy holder in this company on December 8, 1930, and continued as such under a substitute policy until the 21st day of April, 1934, the date of his death. And the defendant now attempts to fix the death limit under the policy from the date of the substitute policy, when as a matter of fact the man had been paying his premium, and was a policy holder in all equity and right, since December 8, 1930."

The defendant then proffered the testimony of Dr. Price, stating he expected to prove by this witness that the deceased died within 90 days after February 7, 1934, as a result of, or caused by complications of, heart trouble. This proffer was disallowed by the Court and the defendant took an exception.

In making this ruling the Court made the following comment:

"The Court is virtually constrained under the unusual circumstances presented here, wherein an illiterate man who did not have the benefit of an educational opportunity, and who had no mental capacity as far as an education was concerned, to know what was in the policies, except as he was told by someone else, and had to sign his name by a mark to a paper, if it was necessary for him to sign one, or have someone else write his name for him.

"The Court might be wrong, from the cold letter of the law, from that standpoint; but as a matter of justice, he knows that he is right; now, here is a man, who had been paying this company money for premiums since December 8, 1930, and because the Company was forced under the law to reorganize and issue him a new policy on February 7, 1934, the company now attempts to escape its liability by figuring the time from the issuance of the substitute policy. As a matter of fact, this man had been a policy holder, as appears from the paper, before the Court now, since December 8, 1930.

"Therefore, if the Court were to allow this question to be answered, and the defendant to retain that position by testimony, it would be doing plaintiff a very great injustice, and deprive her of what she had every right to expect, unless some fraud had developed from an unlawful act or an untruth shown on the part of the deceased, in his contract with the company, and none of that has been shown thus far."

We have quoted thus at length from the statements made by the learned trial Judge to show his point of view and the very grave considerations of substantial justice which moved him to make the rulings above set forth. Before discussing the legal questions thus raised, we think it is apparent that the court below misapprehended the effect of the instanter amendment as actually made. It appears also

that the trial court misapprehended the provisions of Chapter 15885, adopted at the legislative session of 1933, and under which the defendant corporation had been reincorporated shortly before the second policy or certificate was issued. It is true that said Act mandatorily required mutual benefit associations of this character to be reincorporated under the laws of this State and as such bodies corporate to transact business and function and carry out the purposes set forth in their certificates of incorporation under the terms of said Act, which Act among other things required a deposit with the State Treasurer to protect judgments that might be obtained against such association, the filing of reports with and examination by the State Treasurer, and the approval by the State Treasurer of the policies, contracts or certificates to be formulated and issued by the reincorporated associations. But the Act does not *compel* the holders of certificates or policies issued prior to the reincorporation to surrender their old certificates or policies and take new ones in their stead. Indeed, the Act states that it shall not be construed to decrease or alter the benefits to any member under any existing membership certificate issued prior to the effective date of the Act, or the date that the association reincorporates and commences operations under the provisions of the Act; but it does extend the *"privilege"* to members of such an organization previously doing business of *exchanging* their old certificates for certificates required to be issued under the provisions of the Act. The exact language of the Act in these regards is as follows:

"This Act shall not be construed to decrease or alter the benefits to any member under any existing membership certificate prior to the date this Act becomes effective or the date that the Association may adopt and come under the provisions of this Act. Members of any existing organi-

zation previously doing business under the provisions of Chapter 10095, Laws of the State of Florida, and not exempted herefrom under Section 10 hereof, shall have the privilege of exchanging the certificates heretofore issued by such Association for certificates required to be issued pursuant to and under the provisions of this Act."

After the proceedings above outlined were had, the defendant announced that it would not plead further, and both sides rested. The Court took the case under advisement, and thereafter rendered judgment for plaintiff in the sum of $1,000.00, plus attorney's fees of $150.00. Motion for new trial was made and overruled, and defendant sued out this writ of error.

Under our practice, trial courts have wide discretion in granting or refusing amendments to either common law or chancery pleadings. Indeed, such is the general rule in other jurisdictions, but the rule is also generally accepted that an amendment cannot be permitted which sets up a new and distinct cause of action from that set out in the original pleading. Thus an amendment which attempts to set up an entirely distinct wrong or basis of review or relief, or a right arising from a distinct or different contract, from that originally declared on, is regarded as tendering a different cause of action. 49 C. J. 509-512. One of the decisions frequently used to determine whether an amended pleading is for the same or a different cause of action is whether the same evidence will support a judgment rendered upon either. Livingston v. Malever, 103 Fla. 200, 137 So. 113. In the case of Falk v. Salario, 108 Fla. 135, 146 So. 193, the original declaration was upon a promissory note signed by Salario, and fourteen other persons were joined as defendants upon the allegation that Salario in executing the note acted for himself and each of them. Later an amended declaration was filed against the parties

for breach of an implied promise to pay for the land, conveyance of which was made to Salario for the benefit of all the joint adventurers, the purchase price being evidenced by the promissory note being executed by Salario. The note sued on was referred to as having been attached to the first declaration and attempted to be made a part of the new declaration. Demurrers to the new declaration were sustained by the court and on writ of error to this Court it was held that one is not bound by a promissory note executed by another, but not by him, merely because part of the consideration for which the note was given flowed to him who did not sign. Mr. Justice ELLIS, speaking for the Court, said:

"The second declaration rested upon an entirely different cause of action. It arose upon an alleged breach of an implied promise to pay for lands, the conveyance of which to Salario benefited them. The demurrers were properly sustained."

In the case at bar the amendment to the declaration changed the declaration from one suing on a membership certificate dated February 7, 1934, to one suing upon a greatly different membership certificate dated December 8, 1930. This brought about an entire change in the cause of action, and the court therefore erred in overruling the demurrer to the declaration as thus amended.

It is also argued by plaintiff in error that the amendment should not have been allowed because there had been introduced in evidence a letter by Downs to the Company agreeing to accept the new policy February 7, 1934, and agreeing to the cancellation of the old certificate sued on in the amended declaration. It is hardly necessary for us to decide this question, as no issue was made in the case by plea or otherwise, as to the cancellation of the old certificate, or the validity of such cancellation. We might ob-

serve, however, that it happens to be quite generally held that a completed surrender and cancellation of an insurance policy terminates the contract, and the parties are relieved from any liability that might otherwise accrue under the policy, though not from liability already accrued. 32 C. J. 1261. And a policy may be cancelled by mutual agreement, but there must be a meeting of minds, or mutual consent, to constitute a valid cancellation. 32 C. J. 1243. And a cancellation shown to have been procured by fraud or mistake of fact is ineffective, and if the insured is induced to surrender a policy by fraudulent misrepresentation, a bill will lie to revive it. 32 C. J. 1245-1247. A life insurance policy may be cancelled by agreement between the parties and the insurance company is not liable for loss subsequent to such cancellation. Peacock v. Our Home Life Insurance Company, 73 Fla. 1207, 75 So. 799.

There is no showing in the brief evidence taken in this case of any fraud or misrepresentation on the part of defendant corporation. In so far as the record discloses, Mr. Downs voluntarily accepted the new policy, which was a definite premium policy, and agreed to the cancellation of the old one, which was an assessment policy. It is true, the evidence showed that he could not write and his wife had to sign the instrument for him, but it appears that this was done in his presence and at his request. It is also true that there is nothing in the evidence to show that the defendant Company informed Mr. Downs of the difference between the two policies, or that he had any knowledge that the new policy which he was accepting contained the limitations of the liability of the Company which were set up in the defendant's pleas. While persons not laboring under any disability are presumed to know the law, and the contents of their contracts (Stonebraker v. Reliance Life Ins. Co., 123 Fla. 244, 166 So. 583), we think it was the duty of the de-

fendant Company, before completing this exchange of membership certificates, to inform Mr. Downs of his rights under the 1933 statute, or to at least have informed him of the difference between the two certificates. But, for aught the record shows, the Company may have done all this before this cancellation of the old certificate was taken and the new certificate delivered.

On the other hand, there is nothing in the evidence to show or explain why Mr. Downs should have voluntarily released or surrendered the greater protection which he enjoyed under the old certificate and accepted in its stead a new certificate which gave him less protection. The letter which Downs wrote to the Company agreeing to the cancellation of the old certificate and the acceptance of the new one recites that the new certificate had been approved by the Insurance Department of the State of Florida. This at least indicates that he had in all probability received that information from the defendant corporation. Whether they gave him any additional information does not appear. Whether there was any fraud or misrepresentation connected with this transaction is left to mere speculation and conjecture. It is not shown by the evidence. The fact that Mr. Downs was apparently an unlettered man, not able to write, and by inference not able to read, at least afforded an opportunity for imposition if there had been any disposition on the part of the Company to take advantage of the situation. Yet, the fact remains that no effort was made on the part of the plaintiff to show any fraud or misrepresentation whatever, nor was any shown. Furthermore, Mrs. Downs, the plaintiff, the beneficiary in the certificate, is shown to have been present and signed Mr. Downs' name to the instrument of cancellation, and when she brought suit in this case, she brought it upon the new

certificate, and nowhere in her original declaration was the old certificate mentioned or referred to.

Here we are dealing with a common law action, where the rules of procedure are more rigid and inflexible than in equity. Under the pleadings and facts in this case, we hardly think it proper in view of what has been said above, to hold that a recovery of judgment on the new policy by construing its date so as to relate it back to the date of the old policy, could be upheld. Mrs. Downs brought suit on the *new* policy only and then amended so as to base the suit on the *old* policy only. These two instruments constituted two entirely different and distinct contracts, neither one of which could be reformed in a law action. See Western Life Indemnity Company v. Couch (Ind.), 123 N. E. 11; Brown v. U. S. Casualty Company, 88 Fed. 38.

The recent case of Life and Casualty Insurance Company of Tennessee v. Gresham, 168 So. 812, 127 Fla. 234, was an equity case. There suit was brought for the rescission of an agreed cancellation of an old policy and to have such old policy reinstated and enforced in equity, the issuance of a new policy to the contrary notwithstanding; because the new policy by its terms, was never, from its inception, an enforceable insurance contract; and the court below entered a decree for complainant, which decree was affirmed by this Court. In that case a father took out a life policy insuring the life of his young son. It was kept in force for six years. Thereafter the old policy was surrendered and a new policy was issued in its place under circumstances indicating a mutual understanding on the part of the beneficiary and the insurance agent that the new policy, when issued, was to be a valid and enforceable policy as of the date of delivery. A year or so later the child whose life was insured, died. The new policy contained a provision making such policy unenforceable for death

within two years after its date, if, prior to its existence, the insured had been attended by a physician for any serious disease or complaint. At the time the new policy was issued, notwithstanding the specific information given by the child's father to the agent before the old policy was surrendered and cancelled that the child insured had been attended and operated on by a physician for a serious disease, and that the father only wanted to change the existing policy provided that in so doing the new policy would not be voided by the child's illness and treatment, which would not have had any effect under the old surrendered policy—notwithstanding this—the insurance agent informed the beneficiary prior to the closing of the transaction that the child was insurable. Thus in that case the insurance company delivered to the child's father a void policy in exchange for one that was six years old and perfectly valid and enforceable had it been retained and no exchange of policies effectuated. In that case we held that, the new contract being wholly ineffective, the consideration for the cancellation and surrender of the old policy failed, and that under the facts of that case a bill in equity to rescind the cancellation and reinstate the former policy and grant specific performance of it was properly filed.

The cases of Norman v. Merchants and Bankers Mutual Benefit Corporation, 124 Fla. 436, 168 So. 647, and Grand Lodge, etc., v. Harris, 124 Fla. 1, 167 So. 814, are of some interest here, but, under the pleadings, not strictly in point.

However, the principles underlying these cases were no doubt in the mind of the trial Judge when he made the ruling allowing the amendment to the declaration in this case. But the amendment as made apparently did not carry out what the trial Judge had in mind, and this Court is committed to the proposition that the parties to an action at law are bound by the issues made in their pleadings.

Conrad v. Jackson, 89 Fla. 2, 103 So. 113. But where a'
cause has been tried upon an immaterial issue which does
not determine the rights of the parties in the litigation,
judgment should not be entered upon the finding on such a
plea. Evans v. Kloeppel, 72 Fla. 267, 73 So. 180. In this
case, the pleas interposed to the original declaration, while
they still stood as pleas in the case after the declaration was
amended as above set forth, and their sufficiency was not
attacked by the plaintiff, yet were entirely irrelevant and
immaterial as pleas to the declaration as amended.

For the reasons above pointed out, the judgment must
be reversed and the cause remanded to the trial court with
instructions to permit, if applied for, a repleader and a new
trial not inconsistent with the principles enunciated in this
opinion.

Reversed and remanded.

ELLIS, C. J., and TERRELL, J., concur.

CHAPMAN, J., concurs specially.

BUFORD, J., disqualified.

CHAPMAN, J. (concurring).—The record in this case
shows that on the 8th day of December, 1930, plaintiff in
error, Merchants and Bankers Guaranty Company, a cor-
poration, issued a membership certificate No. 6977 for the
sum of $1,000.00 maximum death benefit on the life of
Charlie Downs, who at that time was 65 years of age. The
beneficiary named in the membership certificate was Mrs.
Mollie Downs, wife of the insured Charlie Downs. The
certificate and the record fail to show a medical examiner's
report was required by the plaintiff in error as to the health
or physical condition of the insured. The record shows
further that the necessary premium installments required by
the plaintiff in error were paid and receipts issued therefor.

The membership certificate, *supra,* was affected by Chap-
ter 15885. It became the legal duty of plaintiff in error to

conform with this Act, and to accomplish this objective it was beneficial to its interest to obtain a surrender of the membership certificate, *supra,* and, if agreeable to the parties, to issue one in lieu thereof. On the 7th day of February, 1934, a membership certificate No. 5034 SL issued by plaintiff in error to Charlie Downs, and his wife, Mollie Downs, was made the beneficiary thereof. A lawful surrender and cancellation of the original membership certificate is asserted by plaintiff in error. Proof of death of Charlie Downs was filed by the widow with plaintiff in error.

A question arises as to the method of obtaining a substitution of membership certificates. The record shows that Charlie Downs was 68 years of age at the time of the substitution, he died some few months thereafter, no medical report appears as to his physical condition, but an instrument agreeing to the substitution of certificates appears bearing his signature. His wife testified that the deceased could not read or write and under these circumstances the old certificate was surrendered and another certificate issued. If fraud, misrepresentation or any other act unlawful in its nature was resorted to in obtaining a surrender of the original membership certificate No. 6977, it should and ought to be made an issue, or issues, when the pleadings are reframed, hence the reason for concurring especially.

TERRELL and BROWN, J. J., concur.